ERVIN, Judge,
concurring and dissenting.
I agree with the Commission’s ultimate conclusion in denying the development application. Unlike the majority, I have no problem in approving the Commission’s application of the 1984 principles for guiding development, found in Florida Administrative Code Rule 27F-8.03 (Supp.1985), to the development project, notwithstanding that at the time of their application they had not been submitted to the legislature for appropriate action. In that I do not regard Section 380.05(l)(c), Florida Statutes (1985), to have any relevancy to the issue at hand, I am of the view that the Commission was not required to seek legislative review of the 1984 guiding principles, and could therefore properly apply those principles to the question of whether the project should be approved.
Although subsection (l)(c) of section 380.-05 clearly states that a rule adopted by the Commission designating a critical area of state concern, and providing for principles for guiding development “shall be submitted to the President of the Senate and the Speaker of the House of Representatives for review no later than 30 days prior to the next regular session of the legislature ... ”, and subsection (l)(b) requires that the principles “shall apply to any development undertaken subsequent to the legislative review ... ”, the above language, in my judgment, is inapplicable to the critically designated area of the Florida Keys. The controlling statute is rather Section 380.0552, Florida Statutes — not 380.05. Section 380.0552(1) designated as of July 1,1979 the Florida Keys Area as an area of critical state concern, and incorporated by reference chapters 22F-8 through 22F-13, Florida Administrative Code. Rule 27F-8.06, formerly Rule 22F-8.06, provides the Department of Community Affairs with the authority, semi-annually, or at the direction of the Administration Commission, to, among other things, present recommendations to the Commission regarding proposed changes in the rules, including changes in the principles for guiding development.
Although section 380.0552 — unlike section 380.05 — does not provide a specific method for legislative review of recommen *976 dations made by the Administration Commission regarding rule changes, I see no reason why this court should not accept the interpretation placed upon section 380.0552 by the Department, as reflected in Rule 27F-8.06, which requires only that the Department present proposed changes in the rules to the Commission — not the legislature — for its approval. An agency’s interpretation of a statute which it is legislatively charged with administering is subject to the well-recognized rule that such interpretation shall be accorded great weight and should not be overturned “unless clearly erroneous.” Department of Insurance v. Southeast Volusia Hospital District, 438 So.2d 815, 820 (Fla.1983). Since the department’s construction of section 380.0552 is not clearly erroneous — there being nothing in that statute prescribing a method of legislative review — we should defer to the department’s interpretation. Following the rule of judicial deference to an agency’s construction of a regulatory statute that it is charged to administer is also consistent with the following two principles of statutory construction: First, that statutes must be harmonized with each other, and, in the absence of a showing to the contrary, all laws are presumed to be consistent with each other. 49 Fla.Jur.2d Statutes § 180. Second, in the event of a conflict, the special statute will prevail over a general statute in the absence of clear legislative intent to the contrary. Tribune Co. v. School Board of Hillsborough County, 367 So.2d 627 (Fla.1979); 49 Fla.Jur.2d Statutes § 182.
The majority also refers to the recent legislative amendment to section 380.0552 by chapter 86-170, section 4, Laws of Florida, which incorporated the principles contained in the 1984 amendment to Rule 27F-8.03, but reasons that the amended statute offers no support to the Department’s position, because the amended statute’s effective date is July 1, 1986, and by its terms was not made retroactive. Nevertheless, section 4 of chapter 86-170 in part provides that “the principles for guiding development[,] ... set forth in chapter 27F-8, Florida Administrative Code, ... amended effective August 23, 1984, ... [are] hereby adopted and incorporated herein by reference.” In my judgment, the statute’s reference to the administrative chapter’s effective date of August 23, 1984 includes a statutory adoption of the rule’s effective date, thereby validating the application of the amended principles, adopted by rule as of August 23, 1984, to the project on review.
Appellant also argues that the 1984 principles for guiding development should not be applied, since the county’s approval of the project occurred in January 1984, and the 1984 principles were not adopted until August 23, 1984. Appellant is apparently of the view that the Department should be estopped from imposing the amended principles to the development project, once its application was approved by the county. This argument overlooks the fact that the county’s approval was subject to de novo review by the Florida Land and Water Adjudicatory Commission. And, since the 1984 principles for guiding development were in effect when the administrative hearing was held on the subject project on October 1, 1984, I find appellant’s claim to be without merit. By analogy, the mere possession of a building permit does not create a vested property right, and a permit may be revoked in situations where a zoning law has been amended subsequent to the issuance of the permit. City of Hollywood v. Hollywood Beach Hotel Co., 283 So.2d 867, 869 (Fla. 4th DCA 1973). In the instant case, because appellant never even received final approval of the development permit, estoppel clearly would not apply.
The majority also refers to Askew v. Cross Key Waterways, 372 So.2d 913 (Fla.1979), as support for its position that the Commission’s application of the 1984 amended principles to the proposed project was an invalid exercise of delegated legislative authority. Again I must disagree. Cross Key expressed concern at the process which delegated designation of critical areas and the development of principles for guiding development to the Administration *977 Commission. However, what was declared invalid in Cross Key was 380.05(2)(a) and (b), Florida Statutes (1975), which established the standards for- the location of critical areas. Id. at 925. There is no holding in Cross Key that the development or amendment of principles for guiding development is per se an invalid delegation of legislative authority.
As to issue three, relating to the question of whether the Commission has jurisdiction over the seaward portion of the proposed dock, if, as I believe, the 1984 principles can appropriately be applied to the project at hand, I see no need to address the argument directed to the Commission’s lack of jurisdiction. The dock in question calls for a total length of 190 feet, with 155 feet beyond the mean high water line. The majority holds that because 380.-0552(1) limits the critical area of the Florida Keys to all lands in Monroe County, except all lands seaward of the mean high water mark that are owned by local, state, or federal governments, there was no jurisdiction over the 155 feet of the dock beyond the mean high water mark.
I consider that the hearing officer was correct in his determination that the Commission has jurisdiction to review an entire project, not just that portion of the project landward of the mean high water mark. To hold otherwise would lead to the anomalous result that the Commission has review powers over only a portion of a development project located in a designated area of critical state concern. Since the crucial portion of the dock (that portion linking it to shore) is within the critical area, and since Section 380.07(2), Florida Statutes, provides the Commission with jurisdiction to review development orders, not portions of development orders, I conclude that the entire dock was subject to the Commission’s review.
Finally, whether or not the Commission was incorrect in its conclusion that the Monroe County Code does not authorize in a district zoned RU-2 a dock intended for use in common by all owners in the development is immaterial to the Commission’s ultimate determination that the application should be denied. In my judgment the Commission correctly applied the 1984 principles for guiding development to the proposed project in reaching its decision to deny the application. If the Commission erred in its interpretation of the Monroe County Code, the error was at most harmless.
I otherwise agree with the majority in affirming the remainder of the order on review.