283 So.2d 867 (1973)
CITY OF HOLLYWOOD, Appellant,
v.
The HOLLYWOOD BEACH HOTEL COMPANY, an Ohio Corporation, et al., Appellees.
No. 72-997.
District Court of Appeal of Florida, Fourth District.
September 14, 1973.
Rehearing Denied November 2, 1973.
*868 B.L. David, City Atty., and Myron H. Burnstein, Sp. Atty., Salter, Yeslow & Burnstein, Hollywood, for appellant.
Hugh S. Glickstein, Law Offices of Judson A. Samuels, and Hugh S. Glickstein, Hollywood, for appellees.
CROSS, Judge.
Appellant-defendant, City of Hollywood, appeals a final judgment entered by the circuit court permanently enjoining the application of two municipal zoning ordinances to property owned by the appellees-plaintiffs, The Hollywood Beach Hotel Company, The Hollywood Beach Hotel Development Co., and Ben Tobin, and mandatorily ordering the city to return the building permit fee paid by the plaintiffs. We reverse.
The plaintiffs, Ben Tobin and The Hollywood Beach Hotel, owned a 105-acre plot of real property in the City of Hollywood. The property was zoned RA-5 (golf course use) except for a small 400 x 400-foot portion in the southwest corner of the plot which was zoned RC-12 (multiple family). In late 1968 the plaintiffs decided to redevelop their land into a 6000-unit complete community and petitioned the Hollywood Planning and Zoning Board to zone the entire portion of the land RC-12 (multiple family). The Planning and Zoning Board recommended the change of zoning to the Hollywood City Commission. In April 1969, after numerous public hearings and conferences between the city and the plaintiffs, a comprehensive site plan was agreed upon and the entire plot of land was zoned RC-12 by Hollywood City Ordinance O-69-46. The plaintiffs, in reliance, spent a substantial amount of money for a model of the project, building permits, and architect's fees.
Approximately six months after the plaintiffs' land was zoned multiple family, the Hollywood City Commission, comprised of several newly elected members who were opposed to the plaintiffs' proposal for the use of the land, petitioned the Planning and Zoning Board to rezone the entire tract of land so that one-third of the land would be zoned multiple family and two-thirds of the land would be zoned single family. This petition was denied. An appeal was then taken to the city commission sitting as the Planning and Zoning Board of Appeals. The appeal was tabled by the city commissioners. After it became apparent to the city commission that the plaintiffs could not profitably carry out their project because of the prevalent poor economic conditions, the commission sitting as the Zoning Board of Appeals placed the appeal back on the agenda and affirmed the Planning and Zoning Board's decision to maintain the RC-12 zoning classification on the plaintiffs' land. The plaintiffs were then informed that they must commence construction on the property within ninety (90) days or forfeit their building permit *869 and fee. Electing not to proceed with construction, the plaintiffs in March 1971 surrendered their permit and requested a refund of the building permit fee. The refund was denied.
Thereafter, in March 1972 the city commission approved a density ordinance, Hollywood City Ordinance O-72-26, which would limit the plaintiffs to approximately 2500 units on their property. In June 1972 the city commission approved a plan rezoning all of the plaintiffs' property, except the small plot originally zoned RC-12, as low-rise multiple family dwellings and single family dwellings, Hollywood City Ordinance O-72-124.
Prior to adoption of ordinances O-72-26 and O-72-124, plaintiffs had filed suit in early 1970 to enjoin the City of Hollywood from rezoning plaintiffs' land one-third multiple family dwelling and two-thirds single family as proposed by the newly elected city commission. Legal maneuvering and scrimmaging began to take place. In January 1972 plaintiffs amended their complaint,[1] thereby seeking to enjoin the city from further applying a proposed density ordinance that was under consideration by the city that would establish a maximum of approximately 2500 units on plaintiffs' land. The amended complaint also continued to seek to enjoin the city from rezoning plaintiffs' land one-third multiple family dwelling and two-thirds single family, and concluded by demanding a return of the permit fees paid by the plaintiffs to the city.
The cause finally came on for trial, and at conclusion thereof a permanent injunction was entered in favor of the plaintiffs and against the city enjoining the city from applying its rezoning ordinance O-72-124 and density ordinance O-72-26 to the plaintiffs' property, and also ordered and directed a return of the permit fees. This appeal then followed.
The city contends that the trial court erred in its determination that the city was equitably estopped from rezoning plaintiffs' land to low-rise multiple family dwelling and single family dwelling by ordinance O-72-124 and from applying the density ordinance O-72-26 to the plaintiffs' land on the theory plaintiffs had obtained a building permit, spent a substantial amount of money for architect's fees, prepared displays and models of the proposed community at great cost, in reliance on ordinance O-69-46.
The doctrine of equitable estoppel is applicable to a local government exercising its zoning power when a property owner (1) in good faith (2) upon some act or omission of the government (3) has made such a substantial change in position or has incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the right he acquired. Sakolsky v. City of Coral Gables, 151 So.2d 433 (Fla. 1963).
The mere possession of a building permit does not create a vested property right and a permit may be revoked where the zoning law has been amended subsequent to the issuance of the permit. City of Boynton Beach v. Carroll, 272 So.2d 171 (Fla.App. 1973). Only where the landowner possesses a building permit and where the circumstances that give rise to the doctrine of equitable estoppel are present (i.e., the landowner has in good faith made some substantial change in position or incurred extensive obligations in reliance of the zoning law) does the landowner have a vested property right and the permit may not be revoked by a change of zoning. Edelstein v. Dade County, 171 So.2d 611 (Fla.App. 1965). In most cases the equitable estoppel doctrine has been applied to limit the municipality's power to revoke a building permit by a change of zoning when the landowner has actually begun physical construction on the property *870 in reliance of the zoning law. See Texas Co. v. Town of Miami Springs, 44 So.2d 808 (Fla. 1960); Hough v. Amato, 212 So.2d 662 (Fla.App. 1968). However, other substantial changes in position or extensive obligations such as exercising an option to purchase land or expending substantial sums of money in preparation for construction have been held sufficient to invoke the doctrine of equitable estoppel. City of Gainesville v. Bishop, 174 So.2d 100 (Fla. App. 1965). See also, Sakolsky v. City of Coral Gables, supra.
There is an exception to the above rule that recognizes a city may revoke a building permit where the landowner has in good faith made a substantial change in position or incurred extensive obligations in reliance of the zoning law; i.e., if the municipality can show that some new peril to the health, safety, morals, or general welfare of the municipality has arisen between the granting of the building permit and the subsequent change of zoning to the detriment of the landowner, the change of zoning may effectively revoke a building permit. See Texas Co. v. Town of Miami Springs, supra.
The continuance of the vested property right, derived from the possession of a building permit and a good faith reliance on the zoning laws by the landowner resulting in some substantial change in position or incurrence of extensive obligations, depends on the facts of the case. If the landowner's reliance on the existent zoning took the form of substantial expenditures that did not physically involve the land (i.e., exercising an option to purchase or undertaking extensive planning and preparation for construction), the landowner may lose his vested right only by the expiration of his building permit. If the landowner's reliance on the zoning took the form of substantial expenditures that physically involved the land (i.e., beginning of construction), he may not lose his vested right in the permit and it cannot be revoked by a change of zoning.
There exists a separate line of cases which hold that if the landowner has actual or constructive knowledge of an impending zoning change when he obtains his building permit, he has no basis for a claim of equitable estoppel even if he has substantially changed his position or incurred extensive obligations. Essentially, the landowner has not relied on the existent zoning in good faith, and the doctrine of equitable estoppel is inapplicable. See Sharrow v. City of Dania, 83 So.2d 274 (Fla. 1955); City of Ft. Lauderdale v. Lauderdale Industrial Sites, 97 So.2d 47 (Fla.App. 1957).
Turning now to the instant case, the plaintiffs obtained a building permit from the City of Hollywood on January 23, 1970. Without actual or constructive knowledge of any impending zoning change, the plaintiffs spent almost two hundred thousand dollars on a site plan, models of the community, architect's plans and specifications and building permits. This money was spent in good faith reliance on the city's rezoning of the plaintiffs' land to RC-12 multiple family. Under these circumstances the City of Hollywood was equitably estopped from changing the zoning of the plaintiffs' land from RC-12. The plaintiffs had a vested property right in the continuation of the RC-12 zoning. However, when the city commission decided not to change the zoning classification of plaintiffs' property and notified the plaintiffs that they could start construction under their building permit and the plaintiffs having elected not to proceed or initiate construction on the land and voluntarily surrendering their building permit to the city in March 1971, the plaintiffs thereby relinquished and forfeited their vested right under the building permit and in the continuance of the RC-12 zoning classification of their land. The city could then validly rezone plaintiffs' property from RC-12 to another classification.
Accordingly, the trial court erred in permanently enjoining the city from applying *871 or enforcing the density ordinance O-72-26 adopted by the city on March 1, 1972 against the plaintiffs' property, and the zoning ordinance O-72-124 adopted June 29, 1972 rezoning plaintiffs' land to a low-rise multiple family dwelling and single family dwellings.
The city next contends that the trial court erred in mandatorily ordering the return of the building permit fee to the plaintiffs. Municipalities generally have the authority to extract a fee for a building permit from a landowner who contemplates making improvements on his land. This fee is consideration for several services rendered by the municipality in processing the permit for the landowner. The application for the building permit as well as plans, surveys, topographical data, and other specifications must be examined by municipal employees. The municipality also incurs expenses in connection with printing forms, mailing notices, boards of appeal, and many other items. Inspection of the work done pursuant to an issued permit, both before and after completion, also represents municipal expense. In the case at bar the City of Hollywood did everything that was required of it up to the time that plaintiffs surrendered the building permit. Therefore, the city should not have been mandatorily ordered to return the building permit fee to the plaintiffs.
We have considered the remaining points raised on appeal, and determine them to be without merit.
Accordingly, the final judgment permanently enjoining the city from enforcing the density and rezoning ordinances, and mandatorily ordering the return of the permit fee to the plaintiffs is vacated and set aside, and the cause remanded for entry of a final judgment consistent with the views herein expressed.
Reversed and remanded, with directions.
SMITH, CULVER, Associate Judge, concurs.
MAGER, J., dissents, with opinion.
MAGER, Judge (dissenting):
I concur in the majority view that "the City of Hollywood was equitably estopped from changing the zoning of the plaintiffs' land from RC-12. The plaintiffs had a vested property right in the continuation of the RC-12 zoning." I cannot argee, however, with the majority's ultimate determination that the plaintiffs subsequently "relinquished and forfeited their vested right under the building permit and in the continuance of the RC-12 zoning classification of their land" as a result of the plaintiffs' effort to voluntarily surrender that building permit in March, 1971. The factors leading up to the plaintiffs' effort to secure a refund of the permit fee and the City's refusal to grant such request were matters which were carefully considered by the trial court in reaching its decision to issue a permanent injunction against the City; in my view the aforementioned conduct of the parties does not reflect a sufficient predicate upon which this court can support a determination that plaintiffs forfeited "a vested property right in the continuation of the RC-12 zoning." The City has not clearly demonstrated that the chancellor misconceived the weight and probative effect of the evidence or failed to apply the proper rule of law. Accordingly, I would affirm the decree of the lower court. Joannou v. Joannou, Fla.App. 1960, 117 So.2d 40.
NOTES
[1] The sufficiency of the complaint to state a cause of action prior to adoption of an ordinance affecting the property has not been an issue on appeal.