**The RESERVE, LTD., Plaintiff–Appellant,**

v.

**TOWN OF LONGBOAT KEY, Defendant–Appellee.**

No. 92–2149.

United States Court of Appeals, Eleventh Circuit.

April 1, 1994.

Donald Edward Hemke, Alan C. Sundberg, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, PA, Thomas J. Roehn, Annis, Mitchell, Cockey, Edwards & Roehn, PA, Tampa, FL, for plaintiff-appellant.

David P. Persson, Davis, Persson & Smith, Sarasota, FL, Edward F. Ryan, Nancy E. Stroud, Burke, Bosselman & Weaver, Boca Raton, FL, for defendant-appellee.

Before COX, Circuit Judge, JOHNSON, Senior Circuit Judge, and ATKINS *, Senior District Judge.

COX, Circuit Judge:

The Reserve, Ltd., a Florida limited partnership (the "Reserve"), appeals the grant of summary judgment in favor of the Town of Longboat Key ("Longboat Key"). We affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND [1]

Reserve sought to construct a spa complex in Longboat Key. In 1986, Longboat Key approved the first of several site plans for the complex. (R. 1–1 at Ex. B).[2] Thereafter, Reserve acquired eight acres in Longboat Key upon which to build the proposed complex. Reserve obtained a building permit from Longboat Key to construct fifty-

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. The facts are undisputed unless otherwise noted.

2. Longboat Key approved a revised site plan in 1987. (R. 1–1 at Ex. F, G).

seven condominium units and a spa ("permit"). (R. 1–1 at Ex. D).[3] At the time, section 150.40(A) of the Longboat Key Code provided that a permit would be revoked if, after construction commenced, no "substantial work" was accomplished in any thirty day period.[4] Reserve contends that it spent approximately $6 million in acquiring acreage, designing the complex, demolishing preexisting buildings on the site, site work, and construction costs. (Appellant's Br. at 10).[5]

Throughout the 1980's, Reserve's principal, Dr. Murray Klauber ("Dr. Klauber"), was involved in numerous disputes with Longboat Key over matters unrelated to the spa project. (Klauber Apr. 30, 1991 Dep. at 38–94). In addition, Dr. Klauber was active in politics in Longboat Key in the 1980's. (*Id.* at 65, 142–44, 168–72; Klauber May 15, 1991 Dep. at 537–39, 541–43). Beginning as early as 1984, Dr. Klauber opposed the candidacy of several members of the Longboat Key Commission. (*Id.*). By 1988, Dr. Klauber's relationship with Longboat Key was, at best, strained.

On May 10, 1988, Longboat Key notified Reserve that "substantial work" had not been completed on the spa complex within the last thirty-four days and warned that Reserve's permit would be revoked if "substantial work" was not accomplished by June 5, 1988. (R. 1–1 at Ex. I). Reserve contacted Longboat Key in order to determine what would constitute "substantial work." Longboat Key informed Reserve that the completion of five pile caps would be considered "substantial work." (Smally Dec. 14, 1990 Dep. at 194–95). Although work was begun on five pile caps, not a single pile cap was completed between May 10, 1988 and June 5, 1988. (R. 2–58 at 2). On June 6, 1988, Longboat Key revoked Reserve's permit for failure to complete "substantial work" on the

spa complex within a thirty day period. (R. 1–2 at Ex. J). At the time the permit was revoked, workmen were constructing a pile cap. (Smally Jan. 21, 1991 Dep. at 73).

Reserve, through Klauber and its attorneys, informally approached Longboat Key officials on several occasions in an endeavor to have its permit restored. (R. 1–1 at Ex. K; R. 2–67 at Ex. A, Ex. D; Klauber May 1, 1991 Dep. at 396–99). Those officials refused to reinstate Reserve's permit. (*Id.*).[6] In addition, the Longboat Key Commission called on the letter of credit Reserve posted as a site restoration bond. (Klauber May 15, 1991 Dep. at 447–48). Ultimately, Reserve restored the site and discontinued its efforts to build the spa complex. (*Id.*).

Reserve filed a ten count complaint against Longboat Key. (R. 1–2). In Count I, Reserve alleges that the revocation of its permit, pursuant to the "substantial work" standard, violated its procedural due process rights because the "substantial work" standard is unconstitutionally vague. (*Id.* at 8). Count II alleges that Reserve's permit, in which Reserve had a constitutionally protectible property interest, was revoked arbitrarily and irrationally in order to retaliate against Reserve's principal, Dr. Klauber, in violation of Reserve's substantive due process rights. (*Id.* at 9). Count III alleges that in revoking Reserve's permit, Longboat Key treated Reserve differently than other similarly situated developers in violation of Reserve's equal protection rights. (*Id.* at 10). Count IV, which seemingly mirrors Count II, alleges that Reserve's permit was arbitrarily and unreasonably revoked. Counts V through X allege an assortment of other claims against Longboat Key which are not the subject of this appeal. (*Id.* at 11–16).

---

3. Reserve secured other building permits from Longboat Key that are not material to this appeal. (R. 1–1 at Ex. E, H).

4. While Reserve's permit was active, section 150.40(A) was readopted as section 150.34(B) of the Longboat Key Code. Section 150.34(B) retained the "substantial work" standard for revocation of building permits: "Construction shall be deemed to have been '*SUSPENDED*' or '*ABANDONED*' when no substantial work has

been accomplished in any 30–day period." (R. 2–58 at Attach. B, Ex. B).

5. It is undisputed that Reserve expended large sums on the spa project.

6. We note, parenthetically, that the record is rife with examples of Longboat Key officials openly displaying hostility towards Reserve and its principal regarding the spa project generally, and the restoration of Reserve's permit specifically.

Longboat Key moved for summary judgment. (R.1–57, 2–58). As to Count I, the district court held that Reserve's procedural due process rights were not violated, concluding that the "substantial work" standard was not unconstitutionally vague. (R.3–87 at 5). As to Counts II, III, and IV, the district court arrived at two conclusions. First, the district court concluded that summary judgment was due to be denied with respect to Longboat Key's contention that Counts II, III, and IV were not ripe for adjudication "[b]ecause the question of whether the Plaintiff [Reserve] has sought and received a final decision from Longboat Key [regarding the revocation of its permit] presents a genuine issue of material fact." (*Id.* at 3–4). Second, the district court treated Counts II, III, and IV as "governed by the standards applicable to substantive due process claims." (*Id.* at 6). In order to state a substantive due process claim, a claimant must demonstrate that it has a constitutionally protectible property interest. (*Id.*). The district court concluded that Reserve did not have a protectible property interest in its building permit. (*Id.*). Accordingly, the district court granted partial summary judgment as to Counts I through IV in favor of Longboat Key and denied Longboat Key's Motion for Summary Judgment in all other respects. (*Id.* at 8).[7] Reserve filed an Emergency Motion for Rehearing on the Dismissal of Counts I through IV, and in the alternative, a Motion to Certify under 28 U.S.C.A. § 1292(b) (1993). (R.3–90). The district court denied the motions. (R.4–107). This appeal follows.

## II. STANDARD OF REVIEW

We review a grant of summary judgment de novo. *Vernon v. Resolution Trust Corp.,* 907 F.2d 1101, 1104 (11th Cir.1990). On review, we are bound by the same standards that governed the district court on the summary judgment motion below. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990). Any factual disputes must be resolved in favor of the nonmoving party. *Barnes v. Southwest Forest Indus., Inc.,* 814 F.2d 607, 609 (11th Cir.1987).

## III. ISSUES ON APPEAL & CONTENTIONS OF THE PARTIES

Reserve advances three arguments pertinent to our resolution of this case. First, Reserve contends that its procedural due process rights were violated because its permit was revoked pursuant to the unconstitutionally vague "substantial work" standard, and the district court erred in holding otherwise. Longboat Key counters that "substantial work" is not unconstitutionally vague and that the grant of summary judgment on Reserve's procedural due process claim in Count I should therefore be affirmed.

Second, Reserve contends that it was denied substantive due process because it was deprived of a constitutionally protectible property interest—its permit—arbitrarily and irrationally, and the district court erred in holding otherwise. Reserve argues that its permit was revoked by Longboat Key in order to retaliate against its nemesis, Dr. Klauber. Longboat Key counters that Reserve did not have a protectible property interest in its permit and that the grant of summary judgment on Reserve's substantive due process claim in Count II should therefore be affirmed. In the alternative, Longboat Key argues that the record is devoid of evidence to support the contention that Reserve's permit was arbitrarily or irrationally revoked.

Third, Reserve contends that whether or not it had a protectible property interest in its permit is irrelevant to its equal protection claim in Count III.[8] Reserve claims that the

---

7. Thereafter, Reserve accepted the district court's offer to allow it to voluntarily dismiss Counts V through X without prejudice and the district court so ordered. (R. 4–105).

8. Reserve asserts that the existence of a protected property interest is also irrelevant to Count IV. Reserve labels Count IV as a "state pendent law claim." (Appellant's Br. at 4, 23, and 24; R. 3–90 at 2, 6). In addition, the district court

refers to Count IV as a state pendent law claim in its order denying Reserve's Emergency Motion for Rehearing on Dismissal of Counts I–IV. (R. 4–107). However, we find nothing in the language of Reserve's complaint generally, or in Count IV specifically, to suggest that Count IV is a state law claim. (R. 1–2 at 11). On appeal, Reserve provides us inadequate guidance to identify the claim asserted in Count IV. As Count IV

revocation of its permit violated its equal protection rights because other similarly situated developers' permits were not revoked by Longboat Key. Reserve contends that Longboat Key revoked its permit in order to retaliate against Reserve's principal, Dr. Klauber. Longboat Key counters that the record is devoid of evidence to support an equal protection claim and therefore the district court's grant of summary judgment as to Count III should be affirmed.

Finally, Longboat Key contends that even if Reserve's arguments in support of Counts II, III, and IV are correct, Counts II, III, and IV are not ripe for adjudication because Reserve never secured a *final decision from* Longboat Key regarding the propriety of the revocation of its permit. Reserve responds that it did secure a final decision from Longboat Key such that Counts II, III, and IV are ripe for adjudication. Alternatively, Reserve argues that even if it failed to secure a final decision from Longboat Key, Counts II, III, and IV fall within the futility exception to the ripeness doctrine.

## IV. DISCUSSION

### A. PROCEDURAL DUE PROCESS

■ Reserve contends that the revocation of its permit, pursuant to the "substantial work" standard, violated its procedural due process rights because the "substantial work" standard is unconstitutionally vague. Reserve notes that the Longboat Key Code does not contain guidelines for determining when "substantial work" has been completed, and argues that the term "substantial work," standing alone, is unconstitutionally vague on its face. We disagree.

In determining whether a commercial regulation, such as section 150.34(B), is unconstitutionally vague on its face, we must determine whether the section is "substantially incomprehensible." *See Exxon Corp. v. Busbee,* 644 F.2d 1030, 1033 (5th Cir. Unit B May), *cert. denied,* 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981); *Cotton States*

*Mut. Ins. Co. v. Anderson,* 749 F.2d 663, 668–69 (11th Cir.1984).[9] That is, in order to be unconstitutionally vague the section must be " 'so vague and indefinite as really to be no rule or standard at all.' " *Id.* (citation omitted). We conclude that "substantial work" is not "substantially incomprehensible."

Section 150.34(B) of Longboat Key Code provides: "Construction shall be deemed to have been *'SUSPENDED'* or *'ABANDONED'* when no substantial work has been accomplished in any 30–day period." (R. 2–58 at Attach. B, Ex. B). Upon request, Longboat Key informed Reserve that the completion of five pile caps would be considered "substantial work." Hence, "substantial work" was defined for Reserve, as it applied to Reserve at a particular stage of the spa project's development, by Longboat Key officials.

Reserve contends that because "substantial work" had to be defined on a case-by-case basis, "substantial work" is unconstitutionally vague on its face. Reserve proffers no authority that supports that contention, and we decline to give birth to such a rule. Longboat Key issues building permits for a wide range of projects. What constitutes "substantial work" necessarily varies from project to project. *See, e.g., League to Save Lake Tahoe v. Crystal Enter.,* 490 F.Supp. 995, 1000 (D.Nev.1980), *aff'd,* 685 F.2d 1142 (9th Cir.1982) (recognizing that "substantial work," in the permit revocation context, must necessarily be determined on a case-by-case basis). For example, "substantial work" on a major development would be substantially different from "substantial work" on a private residence. In addition, what constitutes "substantial work" depends on the stage of a given project. In its first thirty days, a developer might clear unwanted trees from a site. That same developer might satisfy the "substantial work" requirement at the conclusion of a project by landscaping. Longboat Key need not provide a more definite

mirrors Count II, we will treat Count IV as a substantive due process claim.

9. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

standard for the revocation of building permits. Accordingly, we affirm the district court's grant of summary judgment as to Count I predicated upon its conclusion that "substantial work" is not unconstitutionally vague such that Reserve's procedural due process rights were violated.

## B. SUBSTANTIVE DUE PROCESS

■ The district court treated Counts II, III, and IV as "governed by the standards applicable to substantive due process claims." (R. 3–86 at 6). A substantive due process analysis, within the deprivation of a property interest context, involves two queries. *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1577 (11th Cir.1989). First, was the plaintiff deprived of a constitutionally protectible property interest? *Id.* Second, assuming a property interest, was the deprivation of that "property interest for an improper motive and by means that were pretextual, arbitrary and capricious, and … without any rational basis[?]" *Hearn v. City of Gainesville*, 688 F.2d 1328, 1332 (11th Cir.1982). The district court concluded that Reserve did not have a protectible property interest in the permit and, accordingly, granted summary judgment as to Counts II, III, and IV. (R. 3–86 at 6–8). We conclude that Reserve did have a protectible property interest in its permit and that the district court therefore erred in granting summary judgment on Reserve's substantive due process claims in Counts II and IV.

"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In the instant case, we look to Florida law to deter-

mine whether Reserve has a property right in its permit.

This circuit has previously addressed the question of whether, in light of Florida law, a landowner possesses a constitutionally protectible property interest in a building permit. Unfortunately, our previous efforts to answer this question have resulted in some confusion. *See Hy Kom Dev. Co. v. Manatee County*, 837 F.Supp. 1182 (M.D.Fla.1993) (recognizing that "precedent from the Eleventh Circuit [regarding the question] is difficult to follow and apply"); *Villas of Lake Jackson, Ltd. v. Leon County*, 796 F.Supp. 1477 (N.D.Fla.1992) (noting that precedent from the Eleventh Circuit "on the question has been difficult to follow and apply"). Longboat Key points to two decisions by this court wherein we found no constitutionally protectible property interest in a building permit. In *Marine One, Inc. v. Manatee County*, 877 F.2d 892 (11th Cir.1989), we held that "Florida law is clear that there is no property right in possession" of a building permit. *Id.* at 894. However, we went on to recognize that a landowner may "pursue an action for injunctive relief, if the landowner has in good faith made some substantial change in position or has incurred extensive obligations in reliance on" a building permit, but "that Florida law does not provide the ability to recover money damages for rescission of a permit." *Id.* at 894–95. In *Mackenzie v. City of Rockledge*, 920 F.2d 1554 (11th Cir.1991), we reaffirmed *Marine One*, noting that "the holding in *Marine One* is clear; Florida law creates no property interest in the possession of a building permit." *Id.* at 1559.[10]

Longboat Key's reliance on *Marine One* and *Mackenzie*, to support the naked assertion that a landowner does not possess a property right in a building permit under Florida law, is misplaced. *Marine One* was clarified on petition for rehearing in *Marine One, Inc. v. Manatee County*, 898 F.2d 1490 (11th Cir.1990) ("*Marine One II*"). In *Ma-*

10. However, *Mackenzie* also recognized that "the doctrine of equitable estoppel may prevent the arbitrary rescission of a permit." *Mackenzie*, 920 F.2d at 1559. "It is unclear whether the court meant that it was considering a pendent state law equitable estoppel claim or an arbitrary

and capricious substantive due process claim. If it was the latter, it was contrary to the reasoning of the first *Marine One* case, which found that the [Florida] state law remedy gave rise to no property interest protected by due process." *Villas of Lake Jackson*, 796 F.Supp. at 1487 n. 8.

*rine One II*, this court held that Florida law does not create a property right in a permit to build on *public* land. *Id.* at 1493. Thus, this court narrowed the *Marine One* holding to the public lands context.[11] The *Mackenzie* court did not take cognizance of the *Marine One II* decision.

This court has decided cases in which we concluded that a landowner might have a constitutionally protectible property interest in a building permit. *See, e.g., Spence v. Zimmerman*, 873 F.2d 256 (11th Cir.1989) (agreeing with the Eighth Circuit that where a Florida municipality lacks discretion and must issue a building permit to an applicant who complies with the statutory requirements, and the applicant has met those requirements, a landowner has a protectible property interest in that building permit); *A.A. Profiles, Inc. v. City of Ft. Lauderdale*, 850 F.2d 1483 (11th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1743, 104 L.Ed.2d 180 (1989) (holding, without discussing Florida law directly, that a landowner has a constitutionally protectible property right in a proposed development where that landowner obtained building permits and commenced construction only to have the construction halted and the property subsequently rezoned to prohibit the permitted use). More recently, federal district courts in Florida have held that a landowner may have a property right in a building permit under Florida law where the circumstances that give rise to the doctrine of equitable estoppel are present—a landowner, in good faith, makes substantial changes in position, or incurs extensive obligations, in reliance on a building permit. *Hy Kom*, 837 F.Supp. at 1186–87; *Villas of Lake Jackson*, 796 F.Supp. at 1490.

■ Despite federal courts' varied interpretations of Florida law regarding building permits, Florida courts have consistently held that a landowner has a property right in a building permit "where the landowner possesses a building permit and where the circumstances that give rise to the doctrine of equitable estoppel are present." *City of Hol-*

*lywood v. Hollywood Beach Hotel Co.*, 283 So.2d 867, 869 (Fla. 4th DCA 1973), *aff'd in part, rev'd in part on other grounds*, 329 So.2d 10 (1976); *see also City of Boynton Beach v. Carroll*, 272 So.2d 171, 173 (Fla. 4th DCA), *cert. denied*, 279 So.2d 871 (1973) (holding that *"possession* of a building permit does not create a vested right ... in the absence of circumstances which would give rise to equitable estoppel"). Thus, the question is whether circumstances exist in the instant case that give rise to the doctrine of equitable estoppel, under Florida law, so as to give Reserve a property right in its building permit.

■ Under Florida law, the doctrine of equitable estoppel may be invoked by a landowner where that landowner, relying "(1) in good faith (2) upon some act or omission of the government[,] (3) has made such a substantial change in position or has incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the right he acquired." *City of Hollywood*, 283 So.2d at 869 (citing *Sakolsky v. City of Coral Gables*, 151 So.2d 433 (Fla. 1963)). Longboat Key issued Reserve a building permit. Thereafter, Reserve spent approximately $6 million in acquiring acreage, designing the spa complex, demolishing pre-existing buildings on the site, site work, and construction costs. As Reserve possessed a building permit and expended large sums of money in reliance thereon, under Florida law, Reserve had a vested property right in its permit. *See City of Hollywood*, 283 So.2d at 869; *City of Boynton Beach*, 272 So.2d at 173. Because we conclude that Reserve had a vested property right in its permit under Florida law, we hold that Reserve had a property interest protectible under the Fourteenth Amendment. *See Hearn*, 688 F.2d at 1332. Accordingly, we conclude that the district court erred in granting summary judgment on Reserve's substantive due process claims in Counts II and IV.

---

11. On petition for rehearing, petitioner argued that this court's precedent supports "the proposition that in Florida there is a protectable property interest in a building permit." *Id.* *Marine II* does not address that challenge. Rather, in *Ma-* *rine Two*, as noted herein, relief was denied solely on the basis that Florida law does not create a protectible property interest in a permit to build on *public* lands. *Id.* at 1493.

As to the second prong of the substantive due process analysis, Longboat Key contends that even if Reserve had a protectible property interest in its permit, the record is devoid of evidence to support Reserve's claim that its permit was arbitrarily and irrationally revoked. Therefore, Longboat Key argues, the district court's grant of summary judgment as to Reserve's substantive due process claim in Count II should be affirmed. The district court did not address this question in considering Longboat Key's Motion for Summary Judgment. Therefore, we decline to reach this issue and do not express an opinion as to its merits. *See Strength v. Hubert,* 854 F.2d 421, 426 (11th Cir.1988) (declining to reach an issue not addressed by the district court).

## C. EQUAL PROTECTION

■ In Count III of its complaint, Reserve alleges that in revoking its permit, Longboat Key treated Reserve differently than other similarly situated developers in violation of Reserve's equal protection rights. The district court granted summary judgment on Count II predicated upon its conclusion that Reserve does not have a constitutionally protectible property interest in its permit. On appeal, Reserve argues that the establishment of a constitutionally protectible property interest is wholly irrelevant to an equal protection claim. We agree.

■ An equal protection claim revolves around whether similarly situated persons are treated differently. *See City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). In opposing Longboat Key's Motion for Summary Judgment, Reserve noted several other developers that Longboat Key allowed to retain their permits despite the fact that *no* work was accomplished on their projects for more than thirty days. (R. 2–67 at 4). Thus, Reserve created a disputed issue of fact regarding whether it had been treated differently than other similarly situated developers.

Longboat Key argues, however, that "mere failure to pursue all offenders of an ordinance regulation is not grounds for a claim of denial of equal protection." (Appellee's Br.

at 20). We have no quarrel with the law so stated. In order "to prevail on a claim that defendant unequally applied a facially neutral statute, a plaintiff must show intentional discrimination." *E & T Realty v. Strickland,* 830 F.2d 1107, 1112 (11th Cir.1987), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988). Reserve contends that Longboat Key revoked its permit in order to retaliate against its principal, Dr. Klauber. There is record evidence to support that contention; a disputed fact, as to the reason for the revocation of Reserve's permit, remains. Accordingly, we conclude that the district court erred in granting summary judgment on Reserve's equal protection claim in Count III.

## D. RIPENESS

■ Longboat Key contends that even if the district court erred in concluding that Reserve had a protectible property interest in its permit, summary judgment as to Counts II, III, and IV should be affirmed because those counts are not ripe for adjudication. In order for Counts II, III, and IV to be ripe for adjudication, Reserve must have secured a "final decision" from Longboat Key regarding the revocation of its permit. *See Executive 100, Inc. v. Martin County,* 922 F.2d 1536 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991); *Eide v. Sarasota County,* 908 F.2d 716 (11th Cir.1990), *cert. denied,* 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991); *see also Taylor Inv., Ltd. v. Upper Darby Township,* 983 F.2d 1285 (3d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993). The district court held that "[b]ecause the question of whether the Plaintiff [Reserve] has sought and received a final decision from Longboat Key presents a genuine issue of material fact, the motion is due to be denied with respect to the ripeness argument." (R. 3–87 at 3). The district court concluded that Reserve satisfied the final decision requirement because Reserve informally approached the Longboat Key Commission directly in an endeavor to have its permit returned. We disagree.

Reserve had at least two avenues by which to challenge the revocation of its permit.[12] First, section 150.34(C) of the Longboat Key Code provides that a building permit may be revalidated by Longboat Key's Director of Public Works upon a showing of "just cause." (R. 2–58 at Attach. B, Ex. A). Second, section 158.032 of the Longboat Key Code provides for a vested rights determination by the Longboat Key Commission. (Id. at Attach. B, Ex. B).[13] Reserve never submitted a formal request for revalidation of its permit pursuant to section 150.34(C). (Id. at Attach. A).[14] Similarly, Reserve never formally requested a vested rights determination from the Longboat Key Commission pursuant to section 158.032. (Id.).[15]

Reserve did contact Longboat Key on several occasions in an endeavor to have its permit restored. For example, Dr. Klauber met with the Director of Public Works and insisted that Reserve's permit be returned. (Klauber Deposition at 396–99). The Director informed Dr. Klauber that Reserve would not get its permit back. (Id.). Reserve, through its attorneys, wrote Longboat Key a series of letters disputing the propriety of Longboat Key's revocation of Reserve's permit. (R. 1–1 at Ex. K, R. 2–67 at Ex. A). In addition, Reserve expressed its willingness "to appear at the Town Commission ... to discuss the possibility of settle-

ment" so as to avoid litigation. (R. 2–67 at Ex. D). One of Reserve's attorneys, and Dr. Klauber, appeared before the Longboat Key Commission. However, that appearance was for the limited purpose of discussing site restoration, not to determine whether Reserve had a vested property right in its building permit. (Cox Deposition at Ex. 6). A commissioner did suggest that any agreement on restoration should be linked to a stipulation that "the building permit was canceled and will not be challenged." (Id. at 22). However, the Commission did not decide whether such a stipulation was a condition precedent to resolving the dispute over site restoration. (Id. at 31–32). Although the Commission discussed Reserve's permit, it never voted on whether the revocation of Reserve's permit was valid.

It is undisputed that Reserve failed to submit a formal request for revalidation of its permit pursuant to section 150.34(C) of the Longboat Key Code. Similarly, it is undisputed that Reserve never formally requested a vested rights determination from the Longboat Key Commission pursuant to section 158.032 of the Longboat Key Code. As noted however, the record is rife with references to informal efforts by Reserve to have its permit returned. Reserve's informal challenges to the revocation of its permit may have rendered a formal request futile,

12. Longboat Key asserts that Reserve had a third avenue by which to challenge the revocation of its permit. Longboat Key contends that Reserve should have had the revocation of its permit reviewed by the Board of Adjustment pursuant to section 150.33 of the Longboat Key Code. (Appellee's Br. at 27). Section 150.33, however, provides for review of the denial of, not the revocation of, a permit. (R. 2–58 at Attach. B, Ex. C).

13. Under section 158.032, a property owner may request a determination from the Longboat Key Commission as to whether the owner's "rights have vested for a proposed development on the property owned by that person, based on the granting of any development order by the Town or any of its commissioners, agencies or departments...." (R. 2–58 at Attach. B, Ex. B). Vested rights is to be "interpreted to include those rights obtained by a property owner who: (1) in good faith; (2) upon some act or omission of the government; (3) has made such a substantial change in position by incurring such extensive obligations and expenses that it would be highly

inequitable and unjust to destroy the acquired right." (Id.).

14. Reserve argues that its insistence that the Public Works Director restore its permit was tantamount to a request for revalidation. (Appellant's Br. at 24). However, Reserve does not contend that it filed a formal request for revalidation under section 150.34(C).

15. Reserve contends that it repeatedly requested that Longboat Key recognize its rights and restore its permit, that Longboat Key repeatedly declined to reinstate Reserve's permit, and therefore, Longboat Key did determine that Reserve did not have a vested property right in its permit. Reserve points to the Commission's determination that the project site should be restored as evidence of the conclusiveness of the Commission's position regarding Reserve's permit. However, Reserve does not argue that it made a formal request to the Longboat Key Commission for a vested rights determination pursuant to section 158.032.

but such efforts are not tantamount to the obtainment of a final decision. Therefore, we find that Reserve did not obtain a final decision from Longboat Key regarding the revocation of its permit and the district court erred in holding otherwise.

Reserve responds that it need not pursue "futile acts" in order to render its claims ripe for adjudication. *See Corn v. City of Lauderdale Lakes,* 816 F.2d 1514, 1516 (11th Cir. 1987).[16] As Longboat Key repeatedly refused to recognize Reserve's rights and restore its permit, Reserve argues, it would have been futile to seek a formal review of the revocation of its permit under section 150.34(C) or section 158.032 of the Longboat Key Code. Therefore, Reserve contends, Counts II, III, and IV fall within the futility exception and are therefore ripe for adjudication.

We do not reach the merits of Reserve's contention that Counts II, III, and IV fall within the futility exception to the ripeness doctrine. The district court did not address that question in considering Longboat Key's Motion for Summary Judgment. Therefore, we decline to determine whether the futility exception applies and leave that question for the district court to grapple with on remand. *See Strength,* 854 F.2d at 426.

## V. CONCLUSION

For the foregoing reasons we AFFIRM the district court's grant of summary judgment as to Count I; we VACATE the district court's judgment as to Counts II, III, and IV, and REMAND for further proceedings.

AFFIRMED in part, VACATED in part, and REMANDED for further proceedings.

---

**16.** In Reserve's Memorandum in Opposition to the Longboat Key's motion for Summary Judgment, Reserve argued that "ripeness does not require a landowner to pursue 'futile acts.'" (R. 2–67 at 31). The district court's order, however, is devoid of any reference to the "futility exception" to the ripeness doctrine. (R. 3–87).