The RESERVE, LTD., et al., Plaintiffs,

v.

TOWN OF LONGBOAT KEY,
et al., Defendants.

Nos. 90–85–CIV–T–23B,
92–762–CIV–T–23B.

United States District Court,
M.D. Florida,
Tampa Division.

May 22, 1996.

Thomas J. Roehn, Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Donald E. Hemke, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, FL, Harry W. Haskins, Sarasota, FL, for The Reserve, Ltd. and Murray J. Klauber, plaintiffs.

Edward F. Ryan, Burke, Bosselman & Weaver, Boca Raton, FL, David Paul Persson, Davis, Persson, Smith & Darnell, Sarasota, FL, for Town of Longboat Key, defendant.

Nancy E. Stroud, Burke, Bosselman & Weaver, Boca Raton, FL, William A. Kebler, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., St. Petersburg, FL, for Hart Wurzburg, Catherine G. Fernald, Carlton Stewart, Louis Pollock, Albert T. Cox, Leonard A. Smally, Russell H. Nowlen, defendants.

### *ORDER*

MERRYDAY, District Judge.

After six years of litigation, the defendants once again present motions for summary judgment (Docs. 134 and 142). The initial summary judgment motion was resolved by Judge Morton (sitting by designation) and ultimately addressed by the Eleventh Circuit Court of Appeals. *The Reserve, Ltd. v. Town of Longboat Key*, 17 F.3d 1374 (11th Cir. 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 729, 130 L.Ed.2d 633 (1995). Judge Morton's partial summary judgment favors the Town of Longboat Key ("Longboat Key") by dismissing Counts I through IV.[1] The Eleventh

---

1. The Reserve, Ltd., voluntarily dismissed Counts V through X to appeal Judge Morton's summary judgment. While Reserve pursued its appeal, the plaintiffs (i.e., The Reserve, Ltd., The Reserve Development Corporation, and Murray J. Klauber) filed in 1992 a complaint including eleven

Circuit's decision affirms the judgment as to Count I, vacates the judgment as to Counts II, III, and IV, and remands the case for further proceedings. The following partial restatement of the facts assumed by that decision provides the background for this order:

> Reserve sought to construct a spa complex in Longboat Key. In 1986, Longboat Key approved the first of several site plans for the complex. Thereafter, Reserve acquired eight acres in Longboat Key upon which to build the proposed complex. Reserve obtained a building permit from Longboat Key to construct fifty-seven condominium units and a spa ("permit"). At the time, section 150.40(A) of the Longboat Key Code provided that a permit would be revoked if, after construction commenced, no "substantial work" was accomplished in any thirty day period. Reserve contends that it spent approximately $6 million in acquiring acreage, designing the complex, demolishing pre-existing buildings on the site, site work, and construction costs.
>
> Throughout the 1980's, Reserve's principal, Dr. Murray Klauber ("Dr. Klauber"), was involved in numerous disputes with Longboat Key over matters unrelated to the spa project. In addition, Dr. Klauber was active in politics in Longboat Key in the 1980's. Beginning as early as 1984, Dr. Klauber opposed the candidacy of several members of the Longboat Key Commission. By 1988, Dr. Klauber's relationship with Longboat Key was, at best, strained. On May 10, 1988, Longboat Key notified Reserve that "substantial work" had not been completed on the spa complex within the last thirty-four days and warned that Reserve's permit would be revoked if "substantial work" was not accomplished by June 5, 1988. Reserve contacted Longboat Key in order to determine what would constitute "substantial work." Longboat Key informed Reserve that the completion of five pile caps would be considered "substantial work." Although work was begun on five pile caps, not a single pile cap was completed between May 10, 1988 and June

5, 1988. On June 6, 1988, Longboat Key revoked Reserve's permit for failure to complete "substantial work" on the spa complex within a thirty day period. At the time the permit was revoked, workmen were constructing a pile cap.

> Reserve, through Klauber and its attorneys, informally approached Longboat Key officials on several occasions in an endeavor to have its permit restored. Those officials refused to reinstate Reserve's permit. In addition, the Longboat Key Commission called on the letter of credit Reserve posted as a site restoration bond. Ultimately, Reserve restored the site and discontinued its efforts to build the spa complex.

*The Reserve, Ltd.*, 17 F.3d at 1375–76 (citations and footnotes omitted).

In their supporting memoranda, the defendants now lodge the following arguments:

(a) Count I is barred by the doctrine of *res judicata;* (b) Counts II through VIII are not ripe and the futility exception does not apply; (c) the alleged Town actions in Counts II, III, IV, VI, VII, VIII and X were not arbitrary and capricious under the deferential standard of review established by this Court, which requires only that the Town's actions be rationally related to the general welfare; furthermore, the Reserve does not have a protectable [sic] property interest under the new substantive due process test enunciated in *McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994); (d) the complaint contains no factual basis for wrongdoing by the individually named defendants; (e) the Commissioners acting in their official capacities are entitled to absolute immunity; (f) individual defendants in their official capacities are also protected by qualified immunity; (g) Count XI fails to allege sufficient facts to entitle Reserve to relief, and is barred by the rule against split causes of action; (h) taking claims in Counts VI and IX are not ripe because Reserve has not sought the just compensation remedies available

counts and adding the seven individual defendants as parties. The first ten counts of the 1992 action are virtually identical to the ten counts

asserted in the 1990 action. The eleventh count is plaintiff Klauber's First Amendment claim.

in state court; and (i) equal protection violations alleged in Counts III and VII fail for the same reasons as Reserve's substantive due process claims.

Docs. 134 and 143.

The plaintiffs reluctantly concede that *res judicata* defeats Count I of the plaintiffs' 1992 action. The Eleventh Circuit's ruling in the 1990 action precludes any further litigation of either the "void for vagueness" issue or the plaintiffs' challenge to the validity of Longboat Key's permit revocation ordinance. The additional plaintiffs included in the 1992 action are bound by the earlier decision. Accordingly, the defendants' motions are granted as to Count I.

Despite the Eleventh Circuit's ruling in *The Reserve, Ltd.*, the defendants' motions are also granted as to Counts II and IV, the substantive due process claims based on Longboat Key's revocation of Reserve's building permit.[2] Subsequent to the appellate decision in this case, the Eleventh Circuit issued an *en banc* opinion in an unrelated case that informs the resolution of this inquiry. *See McKinney v. Pate*, 20 F.3d 1550 (11th Cir.1994) (*en banc*), *cert. denied*, —— U.S. ——, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995).[3]

Attempting to correct our circuit's jurisprudence regarding the Fourteenth Amendment's Due Process Clause, *McKinney* holds that Section 1983 substantive due process claims arising from non-legislative deprivations of state-created property interests are no longer cognizable.[4] Contrary to the plaintiffs' suggestion, the effect of *McKinney* extends beyond employment disputes.[5] *See, e.g., Boatman v. Town of Oakland*, 76 F.3d 341 (11th Cir.1996) (applying *McKinney* to a case resulting from a municipality's refusal to issue a certificate of occupancy to a property owner); *Morley's Auto Body, Inc. v. Hunter*, 70 F.3d 1209, 1217 n. 5 (11th Cir.1995) (noting that, under *McKinney*, the plaintiff's substantive due process claim associated with its removal from a sheriff's wrecker rotation list is "palpably without any merit"), *reh'g denied and suggestion for reh'g en banc denied*, 79 F.3d 1162 (1996). At least one other district court judge has applied *McKinney* to a substantive due process claim involving a building permit. *See Sullivan Properties, Inc. v. City of Winter Springs*, 899 F.Supp. 587 (M.D.Fla.1995) (Sharp, J.).

Applying *McKinney* to the facts of this case leads to the inevitable conclusion that the plaintiffs fail to possess a cognizable substantive due process claim.[6] First, the purported property interest (i.e., Reserve's

---

**2.** Stating in its opinion that Count IV "mirrors" Count II, the Eleventh Circuit treats both counts as substantive due process claims. *The Reserve, Ltd.*, 17 F.3d at 1376, 1378 n. 8.

**3.** *McKinney* governs notwithstanding an earlier appellate determination. The "law of the case" doctrine is inapplicable because *McKinney* was issued after the Eleventh Circuit's decision in this case. (*McKinney's* antedating the rehearing denial is of no consequence.) That is, the Eleventh Circuit announced controlling law contrary to the earlier decision in this litigation. For example, *The Reserve, Ltd.* relies on *Hearn v. City of Gainesville*, 688 F.2d 1328 (11th Cir.1982). *McKinney* explicitly overrules *Hearn*. 20 F.3d at 1558, 1560.

**4.** *The Reserve, Ltd.* illustrates the confusion between substantive and procedural due process that existed in our circuit prior to *McKinney*. *The Reserve, Ltd.* relies on procedural due process cases (e.g., *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)) for the proposition that a state-created property interest is sufficient to assert a substantive due process claim.

**5.** This court invited (Doc. 256) supplemental briefs addressing the effect, if any, of *McKinney* on the plaintiffs' substantive due process claims. The primary (if not exclusive) argument advanced by the plaintiffs in their supplemental memorandum (Doc. 258) is that *McKinney* applies only to employment cases and that the pre-existing land use decisions discussing substantive due process remain unaffected. Although cases involving either Fifth Amendment or Due Process Clause "takings" of real property claims (i.e., claims for just compensation or claims based on eminent domain) remain unaffected, *McKinney* appears to vitiate those cases relying on the Fourteen Amendment's Due Process Clause that involve an interest in a building permit.

**6.** Interestingly, the plaintiffs never assert that this case satisfies *McKinney* (i.e., features a constitutional interest impinged by a legislative act). The plaintiffs rely instead on the possible inapplicability of *McKinney* to land use cases.

interest in the revoked building permit) is created by state law and falls comfortably short of a fundamental right both grounded in the Constitution and "implicit in the concept of ordered liberty." [7] *See McKinney*, 20 F.3d at 1556 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)). Second, both the issuance and revocation of the building permit constitute "executive" and not "legislative" acts.[8] *See Modlin v. City of Miami*, 201 So.2d 70, 73 (Fla.1967). Whether rendered by Longboat Key's legislative body or executive branch (e.g., its public works director and town manager), both decisions affect only a small group of individuals and not the general population.[9] *See McKinney*, 20 F.3d at 1557 n. 9. Accordingly, *McKinney* precludes Reserve's asserting a substantive due process claim based on the revocation of its building permit.

▪ The summary judgment motions are denied as to Count III, the equal protection claim. The plaintiffs assert (1) that Longboat Key discriminated against them by revoking the building permit for the ostensible reason that they failed to complete "substantial work" within a thirty-day period and (2) that no other similarly situated developer suffered a similar consequence. The defendants responded initially that the plaintiffs must possess a protected interest in the building permit to establish an equal protection claim and that the plaintiffs possess no protected interest. Disagreeing with the defendants, the Eleventh Circuit in *The Reserve, Ltd.* holds that the existence of a pro-

tected interest is "wholly irrelevant to an equal protection claim." 17 F.3d at 1381.

The defendants also argued initially that, regardless of whether a protected interest is required, the plaintiffs' equal protection claim is not ripe. Reasoning that Reserve failed to secure a "final decision" from Longboat Key in relation to the revocation of its building permit, the Eleventh Circuit agrees with the defendants on the ripeness defense but holds that the "futility exception" may preclude dismissal. 17 F.3d at 1381–83.

Citing *Eide v. Sarasota County*, 908 F.2d 716 (11th Cir.1990), *cert. denied*, 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991), the defendants now argue that the futility exception is unavailable to the plaintiffs in this case.[10] I disagree. In a footnote, *Eide* cites with approval decisions from the Seventh and Ninth Circuits that require the submission of "at least one meaningful application" to the local zoning authority before a party may avail itself of the futility exception and bring a constitutional challenge to a zoning decision. The Seventh and Ninth Circuits reason that "zoning is a delicate area where a county's power should not be usurped without giving the county an opportunity to consider concrete facts on the merits prior to a court suit." However, the Eleventh Circuit states explicitly that "we need not decide whether to adopt" the "at least one meaningful application" requirement. *Eide*, 908 F.2d at 727 n. 17; *see also Strickland v. Alderman*, 74 F.3d 260, 265 n. 6 (11th Cir.1996) (following *Eide* and refusing to decide whether the "at least one meaning-

---

7. *The Reserve, Ltd.* inquires exclusively into Florida law to determine whether the plaintiffs possess a protected property right in the building permit. 17 F.3d at 1379. Neither that opinion nor the plaintiffs suggest that the right to a building permit arises from the Constitution or that a constitutional property interest is implicated in this case.

8. The plaintiffs explicitly concede this conclusion in their initial memorandum (Doc. 175) when they state that the "defendants' actions were 'zoning enforcement rather than rule making', relied on 'specific rather than general' facts and impact[ed] specific individuals, rather than the general population" (alteration in original). The plaintiffs implicitly concede this conclusion in their supplemental memorandum (Doc. 258)

when they state, without explanation, that "Count II challenges, *at least in part*, legislative action" (emphasis added).

9. In this case, the decisions to issue and revoke the building permit affect only a single entity (i.e., Reserve).

10. The Eleventh Circuit specifically refused to reach the "merits" of the plaintiffs' contention that the futility exception provides them reprieve. The appellate panel left that issue to the district court to "grapple with on remand." 17 F.3d at 1383. If, as a matter of law, the plaintiffs are precluded from relying on the futility exception, the Eleventh Circuit may well have affirmed Judge Morton's judgment based on its ripeness ruling.

ful application" requirement should be adopted).

I agree with Judge Shoob's concurring opinion in *Eide* that the approach of the Seventh and Ninth Circuits fails to account for the fact-specific inquiry that should govern a district court's determination of the applicability of the futility exception. 908 F.2d at 728. Futility is ascertained from the tenor of accumulated circumstance, not by compelling a party's perfunctory compliance with a *per se* requirement that may predictably prove to be superfluous. For example, the "at least one meaningful application" requirement appeals to one's common sense when a developer neither submits a site plan for the proposed project nor requests some form of substantially equivalent relief from the local zoning authority. In that case, judicial intervention is inappropriate because the zoning authority is without reliable information regarding the developer's intentions and is deprived of an "opportunity to consider concrete facts on the merits."

However, the plaintiffs present a somewhat different case. Reserve's plan was already approved, and Longboat Key possessed significant information about its revocation of the building permit. The prophylactic purpose of the "at least one meaningful application" requirement has been satisfied. As Judge Shoob suggests in his concurring opinion, the facts of a specific case may render even a single application a "waste of time."

I confirm the Eleventh Circuit's perspicacious observations (1) that "the record is rife with examples of Longboat Key officials openly displaying hostility towards Reserve and its principal regarding the spa project generally, and the restoration of Reserve's permit specifically," (2) that "the record is rife with references to informal efforts by Reserve to have its permit returned," and (3) that "Reserve's informal challenges to the revocation of its permit may have rendered a formal request futile." *The Reserve, Ltd.*, 17 F.3d at 1376 n. 6, 1382. The sundry papers in this case present for resolution a material issue of fact as to whether further efforts by Reserve to seek reinstatement of its building permit would have been futile.[11] Because the majority in *Eide* did not decide whether to adopt the "at least one meaningful application" requirement, because the reasoning behind that requirement is inapplicable to the facts of this case, and because Reserve's applying for reinstatement of its building permit may have been a mere "waste of time," I conclude that Reserve may litigate the question of whether the futility exception excuses its failure to obtain a "final decision" from Longboat Key regarding reinstatement of the building permit. For these reasons, Reserve's ability to rely on the futility exception and the consequent viability of Count III are issues that remain for resolution at trial.[12]

Based on the plaintiffs' notice of voluntary dismissal (Doc. 268) and this court's consequent dismissal order (Doc. 271), Counts V, VIII, IX, and X were dismissed. We are now left to address the remaining counts, i.e., Counts VI, VII, and XI. Upon consideration, the defendants' motions for summary judgment are granted as to Counts VI and VII and denied as to Count XI.

Counts VI and VII are unrelated to the revocation of Reserve's building permit. These counts challenge the validity of Longboat Key's zoning and comprehensive plans as they pertain to the subject property.[13] The zoning and comprehensive plans, which were enacted before Reserve purchased the

---

11. The same is true regarding the defendants' suggestion that no material issues of fact exist as to whether Longboat Key's revocation decision is rationally related to a legitimate government purpose. The record contains factual issues as to whether the purported non-discriminatory reason is a pretext for some arbitrary and capricious motivation. *See, e.g., Eide v. Sarasota County,* 908 F.2d 716, 722 (11th Cir.1990) (discussing the applicable standard of review for assessing equal protection claims associated with a land use mat-

ter), *cert. denied,* 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991).

12. The defendants' suggestion that *McKinney* bars the plaintiffs' equal protection claim is unavailing. *McKinney* does not involve an equal protection claim.

13. The parties agree that the plaintiff sold the property subsequent to commencing these consolidated actions.

property, "downzone" the property to six units per acre. The plaintiffs claim that the zoning scheme violates both the Due Process and Equal Protection Clauses of the Constitution.[14]

In their summary judgment motions, the defendants contend that the due process and equal protection challenges to the zoning and comprehensive plans are not ripe for consideration.[15] I agree. The ripeness doctrine requires the plaintiffs to obtain a "final decision" before asserting their constitutional challenges.[16] *See Eide v. Sarasota County*, 908 F.2d 716, 723–24 n. 12 (11th Cir.1990), *cert. denied*, 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991). The plaintiffs do not assert that they sought a variance or otherwise obtained a final decision regarding the application to their property of Longboat Key's 1984 and 1986 zoning decisions.[17] Nor do they suggest that any efforts in that regard would have been futile.[18] Accordingly, principles of ripeness preclude the plaintiffs' bringing Counts VI and VII.[19]

In Count XI, plaintiff Klauber asserts a violation of his First Amendment rights. Klauber alleges, among other things, that the revocation of Reserve's building permit was in retaliation for his constitutionally protected political activities and was effected for the purpose of "thwarting" any further political activity. The defendants respond that Klauber fails to allege facts sufficient to state a claim upon which relief can be granted.[20] At oral argument, counsel for the defendants suggested (without citing any authority) that Longboat Key can revoke a building permit with impunity even if the revocation is for the purpose of derailing a property owner's expression of free speech and political involvement. The law seems to gravitate against that onerous result. *Cf. Fikes v. City of Daphne*, 79 F.3d 1079 (11th Cir.1996) (holding that a public employer may not terminate an employee in retaliation for public speech); *see also Rolf v. City of San Antonio*, 77 F.3d 823, 827–28 (5th Cir. 1996) (holding that a landowner states a First Amendment claim against a city and city officials based on a condemnation proceeding brought in retaliation for landowner's opposition to city policy); *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 40–41 (1st Cir.1992) (holding that "the denial of a land use permit in unjustifiable retaliation for the applicant's expressions

---

**14.** Count VI specifically raises a due process claim and alleges that the "downzoning" is arbitrary and capricious as applied to the plaintiffs' property. *McKinney* is inapplicable to this claim because the comprehensive and zoning plans result from legislative acts that implicate property rights grounded in the Constitution.

**15.** Neither the defendants' summary judgment motions nor their answers raise the statute of limitations. The comprehensive and zoning plans at issue in this case were passed in 1984 and 1986.

**16.** Contrary to the defendants' suggestion, the plaintiffs were not required to exhaust the state's inverse condemnation proceedings before bringing their substantive due process challenge to the Town's zoning decisions. Count VI is not a "due process takings" claim but rather an "arbitrary and capricious due process" claim. That distinction dictates the appropriate standard for determining ripeness. *See Eide v. Sarasota County*, 908 F.2d 716, 721–22 (11th Cir.1990), *cert. denied*, 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991).

**17.** The defendants state that Reserve, in 1991 and just prior to selling the property, obtained

from Longboat Key both site plan approval and a building permit.

**18.** The plaintiffs' reliance on the futility exception relates exclusively to the revocation of the building permit and the administrative proceedings available for obtaining reinstatement of that permit. The plaintiffs never invoke the futility exception in relation to their zoning challenges.

**19.** Because ripeness is a jurisdictional question, we need not reach the merits of the plaintiffs' claims asserted in Counts VI and VII. However, the defendants appear to be entitled to summary judgment on those claims because the plaintiffs fail to identify any material facts in the record suggesting that the zoning and comprehensive plans are arbitrary and capricious or that they are not rationally related to a legitimate government purpose. All of the relevant events resulting in this action (i.e., the alleged hostility displayed against Reserve's principal based on his political activities and the consequent revocation of Reserve's building permit) occurred years *after* the zoning and comprehensive plans were passed.

**20.** The defendants also assert various procedural arguments, none of which avails.

of his political views is a First Amendment violation").[21] If invocation of a permit revocation ordinance is merely a pretextual mechanism for some motive that unlawfully violates a citizen's right to free speech, the law must provide a remedy. Accordingly, Klauber may proceed to trial with Count XI, the claim based on an alleged violation of his First Amendment rights.

■ Finally, the summary judgment motions filed by the individual defendants (i.e., Commissioners Wurzburg, Stewart, Fernald, and Pollock; Town Manager Cox; Public Works Director Smalley; and Longboat Key employee Nowlen) are granted as to the remaining counts (i.e., Counts III and XI). The individual defendants maintain that the plaintiffs fail to allege any wrongdoing by them and that they are immune from the claims that remain for trial. Because these claims do not result from legislative acts, the doctrine of absolute immunity is inapplicable.[22] *Crymes v. DeKalb County, Ga.*, 923 F.2d 1482 (11th Cir.1991). Whether the individual defendants are entitled to qualified immunity depends on whether their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). To avoid summary judgment on the qualified immunity defense, the plaintiffs must identify in the record a material issue of fact tending to show that no reasonable public official in the defendants' positions could have viewed the facts as justifying their conduct.

Responding to the summary judgment motions, the plaintiffs make only a brief, passing reference to defendant Nowlen—they fail to provide any explanation that necessitates his participation as a party at trial. With regard to defendants Wurzburg, Stewart, Fernald,

Pollock, Cox, and Smalley, the plaintiffs cite to conduct discussed in deposition transcripts. However, the proffered evidence fails to raise a genuine issue of material fact as to whether these defendants engaged in conduct that violated clearly established, pre-existing law. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556–60 (11th Cir.1993) (reversing a district court's denial of qualified immunity in an action against, among others, a city commissioner, a building inspector, and the director of building and zoning based on alleged harassment and retaliation in connection with a political campaign), *modified in part by* 14 F.3d 583 (1994) (deleting the third and fourth full paragraphs on page 1557 of its earlier decision). Accordingly, as to Counts III and XI, defendants Wurzburg, Stewart, Fernald, Pollock, Smalley, Cox, and Nowlen are entitled to summary judgment in their individual capacities.

Based on the foregoing, the defendants' motions for summary judgment (Docs. 134 and 142) are **GRANTED IN PART** and **DENIED IN PART.**

---

**21.** Interestingly, the defendants argue that the rule announced in *McKinney* applies beyond employment cases but that decisions such as *Fikes* should be limited to employment disputes.

**22.** As discussed earlier, both the issuance and revocation of the building permit constitute executive acts.