Bobbie J. BOWMAN and Harvey
Bowman, Plaintiffs,

v.

The ALABAMA DEPARTMENT
OF HUMAN RESOURCES,
etc., et al., Defendants.

Civ. A. No. 92–D–1365–N.

United States District Court,
M.D. Alabama,
Northern Division.

June 20, 1994.

Wendy Brooks Crew, Birmingham, AL, for plaintiffs.

Stephen K. Simpson, Sharon E. Ficquette, Mary Elizabeth Culberson, Jeffery Harris Long, Montgomery, AL, for defendants.

## *MEMORANDUM OPINION AND ORDER*

De MENT, District Judge.

This matter is now before the court on the defendants' brief in support of their motion to dismiss, filed August 6, 1993, which the court construes as a motion for summary judgment.[1] The plaintiffs filed their response brief on August 6, 1993, in which they incorporated into their brief a response filed by the plaintiffs on December 29, 1992. Also

before the court is the defendants' motion to strike the plaintiffs' more definite statement. The defendants filed this motion on March 16, 1994, and the plaintiffs responded on March 23, 1994. Also before the court is the plaintiffs' motion requesting the court to consider further materials which was discovered after March 23, 1994.[2] The plaintiffs filed this motion on June 17, 1994, and the defendants filed their objections to this motion on June 20, 1994.

For the reasons set forth below, the plaintiffs' motion to consider further materials is due to be denied and the defendants' motion to strike is due to be granted. Further, the defendants' motion for summary judgment is due to be granted, and/or in the alternative, the court finds that the individual defendants are entitled to qualified immunity. The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

### Facts

The evidence, viewed in a light most favorable to the plaintiff, suggests the following facts:

The plaintiffs, Harvey and Bobbie Bowman, operate a daycare facility in Shelby County, Alabama, known as "University of Tots–Southlake". The defendants are the Alabama Department of Human Resources (DHR), Charles Cleveland, Commissioner of DHR, Andrew Hornsby, Commissioner of DHR, the Jefferson County Department, Jeddie Carnes, Licensing Consultant for DHR, James Long, Legal Counsel for DHR, and Mike Gibson, an employee of DHR.

In November of 1989, the plaintiffs opened the University of Tots daycare facility. DHR inspected the facility prior to its opening, found no deficiencies, and issued the plaintiffs a license. A license expires in two years from the date of issuance. Therefore, by its terms, the plaintiffs' license was due to

---

1. Both parties have submitted numerous documents and excerpts from depositions in support of or in opposition to the motion to dismiss. According to Federal Rules of Civil Procedure 12(b), "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...."

2. The court entered an order on March 9, 1994 which stated that after March 23, 1994, no further pleadings would be accepted in this matter.

expire on November 20, 1991. The defendants monitored the facility's operation from the time of its opening to March, 1991, without making any complaints to the plaintiffs concerning its operation. However, in May, 1991, six months before the Bowmans' license was due to expire, the defendants issued a "pre-revocation letter" to the plaintiffs which gave notice to the Bowmans of DHR's intent to revoke their license. In the letter, DHR cited 85 violations of Minimum Standards and 14 allegations of child abuse and neglect.

In June, 1991, the plaintiffs requested an administrative hearing. In October, 1991, the administrative hearing commenced. The hearing was delayed due to numerous discovery disputes and several motions to dismiss by the plaintiffs based on these disputes. The hearing was further delayed because of scheduling problems between the parties. After consuming a total of 13 days of testimony, the hearing was finally concluded on August 25, 1992.

The hearing officer issued his final decision on February 17, 1993. His decision recommended that the plaintiffs be given a six-month probationary permit. On March 29, 1993, in response to the applications for rehearing filed by both parties, the hearing officer rescinded his original recommendation and issued a full day care license to the plaintiffs.

However, the plaintiffs filed the current action on October 30, 1992, after the hearing had concluded, but before the hearing officer issued his decision. The plaintiffs alleged that their constitutional rights to due process of law were violated by the defendants, while acting under color of state law, in the following ways: (1) the defendants violated the laws of the state of Alabama and DHR's policies and procedures by intentionally suppressing claims of complaints regarding the daycare and by failing or refusing to notify the plaintiffs of the deficiencies, thereby preventing the plaintiffs from refuting such complaints in a timely fashion; (2) the defendants violated DHR's policy and procedure by failing to provide consulting services to

the plaintiffs; (3) the defendants refused to produce certain documents to the plaintiffs during the pre-revocation hearing even though they were directed to produce them by the hearing officer; and (4) the defendants refused to produce a critical witness who worked for DHR and who was subpoenaed through DHR who subsequently died during the hearing. All of these allegations, the plaintiffs contend, are in violation of 42 U.S.C. § 1983.

Further, the plaintiffs assert that the defendants violated both 42 U.S.C. §§ 1983 and 1985 in that the defendants conspired to deny the plaintiffs due process when they released confidential documents and information to the *Birmingham News,* in violation of both the DHR's policy and procedures and in violation of the hearing officer's order not to discuss the hearing with the media.[3]

## I. Plaintiffs' Motion to Consider Further Evidence

On June 17, 1994, the plaintiffs filed a motion in which they asked the court to consider further evidence regarding the pending motions to dismiss. However, prior to this motion, on March 9, 1994, the court entered an order stating that no further pleadings on this matter would be accepted by the court after March 23, 1994. Accordingly, the court finds that the plaintiffs' motion is due to be denied as untimely filed.

## II. Defendants' Motions to Strike More Definite Statement

At the February 17, 1994 pretrial conference, the court, upon agreement by the parties, directed the plaintiffs to file a more definite statement in which the plaintiffs were to set forth in detail the facts which they contend give rise to the causes of actions alleged in both the complaint and the amendment to complaint. On March 9, 1994, the plaintiffs filed a 13 page pleading entitled "Plaintiff's [sic] More Definite Statement." On March 16, 1994, the defendants filed motions to strike the more definite statement contending that this pleading was in essence an amendment to the complaint which actual-

---

**3.** The facts were compiled from the plaintiffs' complaint and from the stipulations by the parties in the pretrial order.

ly sets forth new causes of action against the defendants and changes the entire posture of the case.

In both the complaint and the amendment to the complaint, the plaintiffs repeatedly stated that they were denied due process because: (1) the defendants violated DHR's policy and procedure, [Compl. at 5, 6, 8, 11]; and (2) the defendants repeatedly violated the administrative hearing officer's orders by refusing to produce certain documents and witnesses to the plaintiffs and by releasing confidential information to the media. [Compl. at 5, 6, 9–11]. These allegations of violations of the plaintiffs' procedural due process are the thrust of the plaintiffs' complaint.

However, in the more definite statement, the plaintiffs, while reasserting and elaborating on the allegations in the complaint, also assert for the first time claims of deliberate indifference by the defendants. Specifically, the plaintiffs contend that in counts one and two, the defendant Hornsby "exhibited deliberate indifference to his responsibilities in that the policies of D.H.R., as formulated or applied, resulted in such a lack of training and supervision such as to constitute a deliberate indifference to the Constitutional rights of the Plaintiffs." [Pls. More Definite Statement at 3, 4]. Also, the plaintiffs allege that the defendant Cleveland "exhibited deliberate indifference to his responsibilities as Commissioner, in that the policies of D.H.R. as formulated or applied resulted in such a lack of training and supervision as to constitute a deliberate indifference to Plaintiffs' constitutional rights in that there is no procedure in place to guarantee that licensees have access to their filed even under orders from a hearing officer." [Id. at 5]. Further, the plaintiffs assert that the defendant Cleveland "exhibited deliberate indifference ... in that the policies and procedures of D.H.R., in regard to the dissemination of the material to the press, as formulated or applied, resulted in such a lack of training and supervision to cause deliberate indifference to plaintiffs' Constitutional rights to due process...." [Id. at 10]. The more definite statement is the first time that the plaintiffs have made these allegations.

The court agrees with the defendants that these allegations change the complexity of the case. The plaintiffs' claims of "deliberate indifference" and "lack of training and supervision" imply an attack on the adequacy of DHR's established procedures. However, the complaint alleges the defendants violated the plaintiffs' due process rights by failing to follow the established state procedure. These are two entirely different allegations. Alleging that the established state procedures deny due process and alleging that the failure to follow the established state procedure denies due process require separate considerations. Rather than filing a more definite statement, the plaintiffs have essentially filed an amendment to the complaint by alleging these new claims.

The court notes that this case has been pending for almost two years and the motion for summary judgment has been pending for almost a year. At such a late stage in the proceedings, the court finds that an amendment to the complaint would be prejudicial to the defendants and would warrant the court to reopen discovery and order a new briefing schedule on the defendants' summary judgment motion. Accordingly, the motion to strike the plaintiffs' more definite statement is due to be granted.

### III. Motion for Summary Judgment

### A. Summary Judgment Standard

Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case

necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2549, 91 L.Ed.2d 265 (1986). In further elaboration on the summary judgment standard, the Court has said that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989). The court is to construe the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

## B. Due Process

The plaintiffs have alleged that the defendants have intentionally conspired to deprive them due process of law as required by the 14th Amendment in violation of 42 U.S.C. §§ 1983 and 1985. The Due Process Clause of the 14th Amendment provides two different kinds of constitutional protection: procedural due process and substantive due process. "A violation of either of these kinds of protection may form the basis of a suit under section 1983." *McKinney v. Pate,* 20 F.3d 1550, 1555 (11th Cir.1994). Though the complaint is unclear, the plaintiffs may be alleging violations of both substantive and procedural due process. Therefore, the court will begin its analysis on the issue of substantive due process.

### 1. Substantive Due Process

The court's finding as to whether the facts as alleged in the complaint state a substantive due process claim is controlled by the

Eleventh Circuit's recent holding in *McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994). In *McKinney,* the Osceola County Board of County Commissioners ("the Board"), after conducting three days of hearings, terminated McKinney from his position as the Osceola County Building Official. McKinney then brought suit against the Board under 42 U.S.C. § 1983 alleging that the various charges brought against him were pretextual and that his termination violated his constitutional rights and denied him substantive due process under the 14th Amendment. The court determined that:

> [A]reas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because "substantive due process rights are created only by the Constitution." *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (Powell, J., concurring). As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural—not substantive—due process are observed.

*McKinney,* 20 F.3d at 1556. The court explained that Supreme Court precedent demonstrates that because McKinney's "employment rights are state-created rights and are not 'fundamental' rights created by the Constitution, they do not enjoy substantive due process protection," but are entitled only to "the procedural component of the Due Process Clause." *Id.* at 1559. The court then held that McKinney's claim implicates only procedural—and not substantive—due process protection.[4] The court went on to hold that the process available to McKinney under state law did not deprive him of procedural due process.

■ Though the facts in *McKinney* involved state employment law, the implication of its holding is that it applies to all non-legislative acts which involve state-created rights. *See McKinney,* 20 F.3d at 1556 n. 9.

---

**4.** With its holding in *McKinney,* the Eleventh Circuit overruled ten years of precedent in this circuit. In so doing, the court stated "[t]oday, we return this circuit's due process jurisprudence to a proper footing...." *McKinney,* 20 F.3d at 1553.

In the instant matter, the plaintiffs have alleged, and the court has so found, that they have a vested property right in their daycare center license. *See* Court's Order and Opinion, February 18, 1993 at 6. However, this property right is a right created by the laws of Alabama. It is Alabama law which promulgates the licensing of daycare centers. Therefore, the plaintiffs' property right in their license cannot be said to be a "fundamental" right created by the Constitution. The plaintiffs assert that the defendants violated their right to due process in attempting to revoke their license in that (1) the investigation of their daycare center was conducted in an arbitrary and capricious manner, (2) the defendants refused to comply with orders of the Administrative Hearing Officer, and (3) as mentioned earlier in more detail, the defendants violated the laws of Alabama and the policy and procedures of DHR. Since a daycare license is a state-created property right, then, under *McKinney,* the right does not enjoy substantive due process protection and the plaintiffs are only entitled to procedural due process protection.

## 2. Procedural Due Process

■ In this instant case, the fundamental issue is whether the plaintiffs were deprived of their property right to their license without due process of law.

Due Process, as this Court often has said, is a flexible concept that varies with the particular situation. To determine what procedural protections the Constitution requires in a particular case, we weigh several factors:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative bur-

dens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

Applying this test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property.

*Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990). Due process requires that when a state seeks to terminate an interest, "it must afford 'notice and opportunity for hearing appropriate to the nature of the case....' " *Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971) (citations omitted).

However, the first issue that this court must determine is when did the deprivation of the Bowmans' property right occur. At the time the Bowmans received notice of DHR's intent to revoke their license, it is clear that the Bowmans had a valid license and that there was no immediate deprivation. In fact, the letter indicated to the plaintiffs that they had a right to a hearing before the license would be revoked. Therefore, originally, the administrative hearing was a "pre-revocation hearing", as it is referred to in the complaint. [Compl. at 5–6]. However, while the hearing was in progress, the plaintiffs' current license expired on November 20, 1991.[5] The Bowmans, after being notified by the defendants that their license had expired, filed a renewal application on May 29, 1992. By a letter, dated November 12, 1992, the defendants denied the Bowmans' renewal application based upon the charges outlined against them in the administrative hearing. [Pls. Resp. to Show Cause, Ex. G]. These actions in effect turned the administrative hearing from a "pre-revocation hearing" into a "post-deprivation hearing."

Even though they were allowed to operate the daycare pending the hearing, it is clear that the plaintiffs were deprived of their license prior to completion of the hearing.[6]

---

5. The Bowmans originally received their license on November 20, 1989. As earlier mentioned, daycare licenses expire after a two year period. After the license has expired, parties must file an application for renewal.

6. Though the plaintiffs were denied a renewal of their license, the plaintiffs continued to operate the daycare center. Though the letters from DHR informed the plaintiffs they were in violation of the law, no action was taken on the part of DHR to pursue criminal action against them

This deprivation, however, does not automatically mean that the plaintiffs were denied due process. The Supreme Court has recognized "that post-deprivation remedies made available by the State can satisfy the Due Process Clause." *Parratt v. Taylor,* 451 U.S. 527, 538, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981).

> Our past cases mandate that some kind of hearing is required at some time before a State finally deprives a person of his property interests. The fundamental requirement of due process is the opportunity to be heard and it is an "opportunity which must be granted at a meaningful time and in a meaningful manner." However ... we have rejected the proposition that "at a meaningful time and in a meaningful manner" *always* requires the State to provide a hearing prior to the initial deprivation of property. This rejection is based in part on the impracticability in some cases of providing any preseizure hearing under a state-authorized procedure, and the assumption that at some time a full and meaningful hearing will be available.

*Parratt,* 451 U.S. at 540–41, 101 S.Ct. at 1915–16.

In the instant action, the plaintiffs specifically allege that the defendants, individually or in concert with one another, willfully conspired to deny them procedural due process in failing to renew their license and/or in attempting to revoke their current license in that they

> (1) refused to produce to Plaintiffs documents as directed by the Hearings Officer to be produced, (2) refused to produce a critical witness who was subpoenaed through the Alabama Department of Human Resources and worked for the Department at the time of the issuance of the subpoena, (3) violated Alabama Department of Human Resources' policy and procedure by failing to notify Plaintiffs of allegations in a timely fashion or in a manner in which the Plaintiff would have notice of the specifics of the allegations and a fair opportunity to refute them, (4) violated Alabama Department of Human Resources' policy and procedure by failing to

provide consulting services to Plaintiffs as required by the Alabama Department of Human Resources' policy and procedure manual.

[Compl. at 6]. The plaintiffs further contend that the defendants conspired to deprive them due process of law in that they released confidential information to *The Birmingham News* in violation of the policy and procedure of DHR. In other words, the plaintiffs contend that the defendants through these actions failed to follow established state procedures.

> In *Parratt* (and its progeny, *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)), the Supreme Court held that due process did not require predeprivation hearings where the holding of such a hearing would be impracticable, that is, where the deprivation is the result of either a negligent or an intentional deprivation of property. All that due process requires, the Court said, is a post-deprivation "means of redress for property deprivations satisfy[ing] the requirements of procedural due process."

*McKinney v. Pate,* 20 F.3d 1550, 1562–63 (11th Cir.1994) (citations omitted). Thus, even though it is alleged that the defendants intentionally conspired to deprive the plaintiffs of their property interest in the daycare center license by violating DHR's policy and procedure and by refusing to follow the administrative hearing officer's orders, the plaintiffs' action would still fail if the state's post-deprivation hearing satisfies the requirements of procedural due process.

In *Parratt* and *Hudson,* the Court held that post-deprivation remedies are all the process that is due if they are the only remedies the state could be expected to provide. *Parratt,* 451 U.S. 527, 101 S.Ct. 1908; *Hudson,* 468 U.S. 517, 104 S.Ct. 3194. The Court further stated that if the deprivation is due to the "random and unauthorized" acts of a state employee, the state could not be expected to provide a meaningful hearing prior to the deprivation. *Id.*

> Section 1983 must be preserved to remedy only those deprivations which actually oc-

or to close down the facility while the administrative hearing was pending.

cur without adequate due process of law, such as those which result from a *state's* conscious decision to ignore the protections guaranteed by the Constitution. It should not be employed to remedy deprivations which occur at the hands of a state employee who is acting in direct contravention of the state's established policies and procedures which have been designed to guarantee the very protections which the employee now has chosen to ignore.

*Easter House v. Felder,* 910 F.2d 1387, 1404 (7th Cir.1990), *cert. denied,* 498 U.S. 1067, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991). In these situations, the state could only be expected to provide meaningful post-deprivation remedies which must be procedurally adequate to redress the wrongful deprivation.

█ In the instant action, the plaintiffs have asserted that the defendants Hornsby, Cleveland, Long, and Gibson conspired to violated DHR's policy and procedure. These acts can only be characterized as "random and unauthorized" intentional acts because they are in direct violation of the established state procedure. "The state can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct." *Hudson,* 468 U.S. at 533, 104 S.Ct. at 3203. *See Easter House,* 910 F.2d 1387 (holding that employees' licensing conspiracy were nothing more than a random and unauthorized decision that completely disregarded established state procedures). Accordingly, this court must look to the adequacy of the post-deprivation remedy to determine whether the plaintiffs received procedural due process protection as provided for under the Constitution.

The court finds that the post-deprivation remedies that the plaintiffs received provided them with a full measure of procedural due process. The plaintiffs were given notice and an opportunity to be heard through an administrative hearing. The hearing included the following:

(1) an impartial decisionmaker; (2) retained counsel, if desired; (3) an effective opportunity for the plaintiffs to defend by confronting any adverse witnesses and by presenting their own arguments and evidence orally; (4) a decision resting solely on the legal rules and evidence adduced at the hearing; and (5) a statement of reasons for the decision and the evidence relied on.

In fact, it is hard for the court to understand how the plaintiffs contend that the procedure was inadequate, especially in the instant matter. The determination of the hearing officer was that even though there was proof that the plaintiffs violated the minimum standards of DHR, these violations were not severe enough to warrant a revocation of the plaintiffs' license. The hearing officer then reinstated the license and made it retroactive to cover the time period for which the Bowmans were operating without a license.

In weighing the factors set out earlier in *Mathews,* 424 U.S. 319, 96 S.Ct. 893, it is clear that the post-deprivation remedies provided to the plaintiffs meet the procedural protections required by the Constitution. First, the hearing provided to the plaintiffs recognizes the importance of the plaintiffs' property right in their license by providing the plaintiffs with an administrative hearing. Second, the state procedures recognizes the "risk of an erroneous deprivation ... through the procedures used" and provides a opportunity to be fully heard on any deprivation that has occurred. Finally, the procedures considers the state's interest in protecting the children at the daycare center. The administrative hearing provided to the plaintiffs strikes a careful balance between insuring the safety and welfare of children in daycare centers and protecting the plaintiffs' property right in a daycare license.

Accordingly, the court finds that the defendants' motion for summary judgment is due to be granted because the plaintiffs were given all the procedural due process protection available to them under the Constitution.

## C. Qualified Immunity

However, even had the court found that the plaintiffs' due process rights were violated, the individual defendants would still be entitled to qualified immunity under *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82

L.Ed.2d 139 (1984). An official is entitled to qualified immunity unless the conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). *See Procunier v. Navarette,* 434 U.S. 555, 564, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978); *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975). "To defeat a qualified immunity defense, [the plaintiffs are] required to show that the defendants violated a clearly established statutory or constitutional right of which a reasonable person would have known." *Bailey v. Board of County Comm'r of Alachua County,* 956 F.2d 1112, 1123 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992). *citing Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). *See Rich v. Dollar,* 841 F.2d 1558, 1563–64 (11th Cir.1988). "[A]n official would not be held liable in damages under § 1983 unless *the constitutional right he was alleged to have violated* was 'clearly established' at the time of the violation." *Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984).

In *Davis,* the Court was presented with the issue of whether an official who violated the plaintiff's federally protected rights, which were not clearly established, would lose his qualified immunity because his conduct was violative of a clearly established state law. The Court determined that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis,* 468 U.S. at 194, 104 S.Ct. at 3019. "The Court held in *Davis* that an official's clear violation of a state administrative regulation does not allow a § 1983 plaintiff to overcome the official's qualified immunity.... A plaintiff who seeks damages ... may overcome the defendant official's qualified immunity only by showing that *those* [constitutional or statutory] rights were clearly established." *Elder v. Holloway,* —— U.S. ——, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994).

The defendants contend that the plaintiffs have asserted against the individual defendants only violations of state regulations. They argue that these state law violations do not defeat their qualified immunity under the *Davis* standard because they are not violations of a federally protected right.

In *Davis,* the Court reasoned that

officials would be liable in an indeterminate amount for violation of any constitutional right—one that was not clearly defined or perhaps not even foreshadowed at the time of the alleged violation—merely because their official conduct also violated some statute or regulation. And, in § 1983 suits, the issue whether an official enjoyed qualified immunity then might depend upon the meaning or purpose of a state administrative regulation, questions that federal judges often may be unable to resolve on summary judgment.

*Davis,* 468 U.S. at 195, 104 S.Ct. at 3019–20. Such a result would be unacceptable because it

would disrupt the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties. The qualified immunity doctrine recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated.

*Id.,* 468 U.S. at 195, 104 S.Ct. at 3019.

However, the Court stated that "[s]tate law may bear upon a claim under the due process clause when the property interest protected by the Fourteenth Amendment are created by state law." *Davis,* 468 U.S. at 193 n. 11, 104 S.Ct. at 3018 n. 11. *See Board of Regents v. Roth,* 408 U.S. 564, 576, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The Court noted, however, that the appellee in *Davis* did not contend that the procedural rules in state law govern the constitutional analysis of what process was due to him under the Fourteenth Amendment. *Davis,* 468 U.S. at 193 n. 11, 104 S.Ct. at 3018 n. 11. "Indeed, because federal law determines what process is due, the violation of the state

regulation in [*Davis*] did not 'bear upon the claim of constitutional right that appellee asserts under § 1983.'" *Spruytte v. Walters,* 753 F.2d 498, 511 (6th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986) (citations omitted).

> Thus, in the context of a violation of due process, the critical distinction between regulations that bear upon the constitutional right and those that do not is collapsed into the distinction between regulations that give rise to the protected interest and regulations that merely provide what process is due once a protected interest has been found. The latter distinction is consistent with a goal of preserving official immunity when the official violates a regulation that is "irrelevant to the merits of [the] underlying constitutional claim." *Scherer,* [468 U.S. at 191] 104 S.Ct. at 3017.

*Spruytte v. Walters,* 753 F.2d 498 (6th Cir. 1985) (finding that officials were not entitled to qualified immunity where the administrative rule that they violated was the very rule that created the property interest).

■ In the instant matter, had the court found that the plaintiffs were deprived of their license without due process of law, the individual defendants would still be entitled to qualified immunity. The plaintiffs' contentions are that the individual defendants failed to follow DHR's policies regarding monitoring of daycare centers in that they failed to provide consulting services and failed to give notice of complaints filed against them. They further contend that the individual defendants failed to follow the orders of the administrative hearing officer and failed to follow DHR's policy when defendants Gibson and Long released confidential documents to the media. These violations are violations of state procedures. They are not violations of procedural due process under the Constitution. The due process available to them under the Constitution is notice and opportunity to be heard on the deprivation. The deprivation at issue here is the deprivation of the license. If the defendants had failed to give notice to the plaintiffs of their intent to revoke the license or failed to give them a hearing, then a constitutional right would have been violated because the license is the protected property interest. The state procedures for monitoring a daycare facility or the other alleged violations are not constitutionally protected rights.

Thus, in applying *Spruytte,* the court finds that the violations of state regulations alleged by the plaintiffs against the individual defendants merely address "what process is due once a protected property interest has been found." The violations of DHR Minimum Standards and the Alabama Administrative Code and the refusal to follow the orders of the administrative hearing officer are only violations of the state process due them after they have acquired their daycare center license. They are not constitutionally protected rights. It is only if the defendants deprived the plaintiffs of notice and opportunity to be heard on the deprivation of the license, which is the heart of the procedural due process claim, that their qualified immunity defense would be defeated. *See Bailey,* 956 F.2d at 1125–1126 (holding that defendants were not entitled to qualified immunity under a procedural due process claim when they failed to give the plaintiffs a hearing and failed to give notice of his right to appeal).

Therefore, the court finds that the violations by the defendants of state regulations are "irrelevant to the merits of the underlying constitutional claim", i.e., the underlying constitutional claim being the deprivation of the plaintiffs' daycare center license. Accordingly, the individual defendants are entitled to qualified immunity because, under *Davis v. Scherer,* "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis,* 468 U.S. at 194, 104 S.Ct. at 3019.

## IV. Pendent State Law Claims

■ In Counts 6 and 7 of the amendment to the complaint, the plaintiffs have alleged violations of the state law torts of outrage and slander. However, having dismissed the federal claims, the court is faced with the issue of whether it should assert jurisdiction over the remaining state law counts. In *Carnegie–Mellon University v. Cohill,* 484

U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), the Supreme Court stated

a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

*Cohill,* 484 U.S. at 350, 108 S.Ct. at 619. The Court further went on to state that "if the federal claims are dismissed before trial ... the state claims should be dismissed as well." *Id.* 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7. Though the Court recognized that this was not a mandatory rule.

In considering and weighing the factors set out in *Cohill,* the court finds that, in the interest of judicial economy, convenience, fairness and order, it would be best if the court declines to exercise jurisdiction over the state law claims. There being no remaining federal causes of action, the court finds that counts 7 and 8 are due to be dismissed without prejudice.

### V. Conclusion

Accordingly, it is CONSIDERED, ORDERED, and ADJUDGED that the defendants' motion for summary judgment be and the same is hereby GRANTED and that JUDGMENT be and the same is hereby entered in favor of all defendants on counts 1 through 5 and that the plaintiffs take nothing by their said suit.

Further, and in the alternative, the court finds that the individual defendants are entitled to qualified immunity pursuant to *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) on counts 1 through 5 and it is CONSIDERED, ORDERED, and ADJUDGED that summary judgment be and the same is hereby GRANTED on said alternate grounds and that JUDGMENT be and the same is hereby entered in favor of all individual defendants on counts 1 through 5

and that the plaintiffs take nothing by their said suit.

It is further CONSIDERED and ORDERED that the plaintiffs' motion to consider further evidence be and the same is hereby DENIED as untimely.

It is further CONSIDERED and ORDERED that the defendants' motion to strike the plaintiffs' more definite statement be and the same is hereby GRANTED.

As to counts 7 and 8, it is further CONSIDERED and ORDERED as follows:

1. That these counts be and the same are hereby DISMISSED WITHOUT PREJUDICE to the right of any party to move the court to reinstate these claims herein not adjudicated in or discharged by the state court (if, for example, the statute of limitations creates a bar to the claims being filed in state court, the plaintiff may move the court to reinstate these claims in this court);

2. That such reinstatement, if and when allowed, will cause the filing date of any claim so reinstated to relate back to the original filing date of this action;

3. That any motion for reinstatement must be filed by a party within 60 days after it is determined that said state causes of action are barred under an applicable state statute of limitations.