**SULLIVAN PROPERTIES, INC., a
Florida corporation, Plaintiff,**

v.

**The CITY OF WINTER SPRINGS, a
Florida municipality, Defendant.**

No. 95–492–CIV–ORL–18.

United States District Court,
M.D. Florida,
Orlando Division.

Sept. 25, 1995.

588

Michael D. Jones, Law Office of Michael D. Jones, Winter Springs, FL, Jeffrey Brown, Florida Department of Environmental Protection, Tallahassee, FL, for plaintiff Sullivan Properties, Inc., a Florida corporation.

Dale O. Morgan, Michael J. Roper, Dean, Ringers, Morgan and Lawton, P.A., Orlando, FL, for defendant City of Winter Springs, a Florida municipality.

## ORDER

G. KENDALL SHARP, District Judge.

This case is before the court on Defendant City of Winter Springs' (Winter Springs') motion to dismiss Plaintiff's second amended complaint (Doc. 16). Plaintiff Sullivan Prop-

erties, Inc. (Sullivan) removed this case from state court, and alleges that Winter Springs violated Sullivan's constitutionally protected rights by denying Sullivan a permit to dig a "borrow pit" within Winter Springs' jurisdiction. Sullivan has filed two counts in its complaint, claiming that Winter Springs violated (1) Sullivan's right to equal protection under the law, and (2) Sullivan's substantive due process rights. Winter Springs has responded by asserting that Sullivan has failed to state a claim for which relief may be granted in either count. The court concludes that Sullivan has filed an adequate complaint alleging a violation of his equal protection rights and his rights protected by the *procedural* component of the Due Process Clause.

## I. Facts

■ When considering a motion to dismiss, the court must view the allegations made in the complaint in the light most favorable to the plaintiff and assume the allegations in the complaint are true. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 994–95 (11th Cir.1983). Plaintiff Sullivan is a Florida corporation, and for all times relevant to this motion was an authorized representative of or the actual owner of a development project known as Lakes of Tuscawilla in Winter Springs, Florida. This property is currently zoned for high density residential and commercial use that will allow the development of 416 single family homes and more than 500 apartment units. In order to finance its purchase of the property, Sullivan designed a two-phase project involving the construction of a fifty acre lake system with public parks, approximately seventy-six lakefront residential lots, and 180 apartment units. The lake development was to take place soon after the purchase, so that Sullivan could immediately sell the fill dirt from the lake system to the State of Florida for the completion of an adjacent highway.

Sullivan submitted a preliminary development plan to the City of Winter Springs for approval, along with a request for a borrow pit permit to construct the lake system. The City Engineer, after review of the applicable codes and ordinances and with the aid of independent consultants, approved the construction of the borrow pit. Nevertheless, the Winter Springs City Commission (Commission) insisted that Sullivan provide additional information before granting the permit, though no statute or ordinance required any additional submissions. Sullivan obtained these required engineering and environmental studies and appeared before the Commission, who allegedly denied the borrow pit permit without justification. Instead, the Commission demanded that Sullivan take further action to ensure that no environmental harm would result from the borrow pit excavation. Over the course of one year, Sullivan and its consultants met with various city and state officials to satisfy the Commission's requests. The Winter Springs Board of Adjustment unanimously granted a variance to construct a "wet bottom" retention pond as part of the lake system.

All of the plans, studies and other reports that Sullivan submitted met or exceeded all requirements for the borrow pit's construction, allegedly rendering the ·issuance of a permit by the Commission a ministerial act. However, the Commission expressed continued concern about environmental issues and demanded that Sullivan pay a disinterested consultant to review Sullivan's engineering and environmental studies. After learning that this consultant would agree with Sullivan's conclusions, the Commission then intentionally delayed the submission of the consultant's report until it could find another basis for denying the permit. After the consultant issued his report, the Commission denied the borrow pit permit by asserting Winter Springs' Comprehensive Plan prohibited "mining." Sullivan asserts that its permit application should not have been affected by the subsequent enactment of the Comprehensive Plan, or alternatively that the Commission could not change the definitions in the Comprehensive Plan without following established procedures.

Sullivan contends that the Commission denied its permit application because the Commission was concerned that the reduction in the development's density would have a direct effect on the amount of revenue Winter Springs could collect for sewer use. Winter Springs had previously purchased a local util-

ity company and relied on expected sewer revenues to pay for the company. Sullivan also asserts that Winter Springs historically has permitted property owners and developers to construct borrow pits in accordance with their development plans. According to Sullivan, Winter Springs permitted the Florida Department of Transportation to dig a borrow pit immediately adjacent to Sullivan's property in order to construct a state road without requiring environmental or engineering studies.

Sullivan originally filed this action in the Circuit Court of Florida's Eighteenth Judicial Circuit on March 24, 1993. The original complaint named the City of Winter Springs and three former members of the City Commission, and sought damages for violations of Sullivan's constitutional rights. These defendants then removed the action to federal court. On July 6, 1993, Sullivan moved to amend the complaint by deleting all federal causes of action and asked the court to remand the case to state court. The Honorable Anne C. Conway, United States District Judge for the Middle District of Florida, granted Sullivan's motion to amend the complaint and to remand the case to state court. However, on October 3, 1994, the Honorable O.H. Eaton, Jr., Circuit Judge for Florida's Eighteenth Judicial Circuit, dismissed Sullivan's first amended complaint in its entirety and granted Sullivan leave to amend again. Sullivan then raised federal claims against Winter Springs in its second amended complaint, and Winter Springs again removed the case to federal court.

## II. Legal Discussion

■ In its motion to dismiss, Winter Springs must demonstrate that Sullivan can prove no set of facts consistent with the pleadings which would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *accord Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir.1990). Sullivan has alleged two counts in its complaint. Count I alleges that Winter Springs' actions denied Sullivan its right to equal protection of the law, in violation of the Fourteenth Amendment. In Count II, Sullivan claims that Winter Springs violated its rights protected by the substan-

tive component of the Fourteenth Amendment's Due Process Clause. Winter Springs has raised a number of issues in support of its motion to dismiss Sullivan's case. First, Winter Springs asserts that the doctrine of judicial estoppel bars Sullivan from bringing a federal claim, and that Sullivan does not have standing to bring this action. Winter Springs also alleges that Sullivan has failed to state an equal protection claim for which relief may be granted, because it does not explain how it was treated differently from other similarly situated entities. Finally, Winter Springs asserts that Sullivan's substantive due process claim is flawed in a number of ways. The court will consider these issues individually.

### A. Judicial Estoppel

■ Winter Springs asserts that, under the doctrine of judicial estoppel, because Sullivan previously announced it would dismiss its federal causes of action in order to remand the case to state court, Sullivan cannot plead federal claims again and remove this action to federal court. "Judicial estoppel is a doctrine whereby a party is estopped from asserting a proposition in the present proceeding 'merely by the fact of having alleged or admitted in his pleadings in a former proceeding under oath' an allegation to the contrary." *Bregman v. Alderman*, 955 F.2d 660, 664 n. 3 (11th Cir.1992) (quoting *Long v. Knox*, 155 Tex. 581, 291 S.W.2d 292 (1956)). As the Seventh Circuit has noted, the doctrine "is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories." *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir.) (citing *Scarano v. Central R.R. Co.*, 203 F.2d 510, 513 (3d Cir.1953)), *cert. denied*, —— U.S. ——, 113 S.Ct. 505, 121 L.Ed.2d 441 (1992).

■ At its core, the doctrine of judicial estoppel ensures that a party will not argue "inconsistent positions to gain an unfair advantage over its adversary." *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 540 (9th Cir.1991), *cert. denied*, 503 U.S. 977, 112 S.Ct. 1603, 118 L.Ed.2d 316 (1992). For example, in *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208 (1st

Cir.1987), the plaintiff claimed that he would drop an antitrust claim to prevent the issuance of a stay in one action while appealing another case involving the same parties and subject matter. In the appeal, however, the plaintiff attempted to preserve the antitrust claim. The appellate court rejected the plaintiff's argument, calling it a "self-serving self-contradiction" that should not be permitted in the courts. *Id.* at 213.

In this case, Sullivan initially declared it would drop its federal claims in order to remand the case to state court, at least in part because it recognized the merit of the individual defendants' qualified immunity defenses. Now Sullivan has reasserted federal claims against Winter Springs, and finds itself again in federal court. Sullivan has not gained any advantage by dropping and then reasserting federal claims; it is in the same position as it was two years ago, and the only effect of Sullivan's legal maneuvering has been to delay the hearing of its substantive claims. Because Sullivan has not gained any advantage by withdrawing and then reasserting federal claims, the court will not dismiss Sullivan's complaint based on the doctrine of judicial estoppel.

### B. Standing

Winter Springs next contends that Sullivan does not have standing to bring this action. Winter Springs notes that Sullivan was not the owner of the property involved when it applied for a permit to construct its borrow pit. Rather, Sullivan was a contract purchaser of the property, and therefore Winter Springs claims that Sullivan did not possess a property interest sufficient to raise a constitutional claim. While the existence of a cognizable property interest is relevant for due process claims, *see infra* Part D.1., a plaintiff's property interest only indirectly affects an inquiry into his standing to bring suit.

The court interprets Winter Springs' assertion as an allegation that as a mere contract purchaser Sullivan has not sustained sufficient injury to be able to bring an action. The Supreme Court has established that to establish standing a "plaintiff must have suffered an 'injury in fact'—an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (internal citations omitted); *accord Harris v. Evans,* 20 F.3d 1118 (11th Cir.) (en banc), *cert. denied,* — U.S. ——, 115 S.Ct. 641, 130 L.Ed.2d 546 (1994). While Sullivan may not have been the actual owner of the property throughout the relevant period, Sullivan has alleged that it controlled the property and was authorized to act on behalf of the property's owner. Sullivan also alleges that Winter Springs caused it injury through its inability to sell fill dirt to the Florida Department of Transportation and proceed with its proposed development of the property. These alleged injuries are sufficient for Sullivan to fulfill its standing requirements, and Winter Springs' argument is without merit.

### C. Equal Protection Claim

Winter Springs argues that Count I of Sullivan's complaint, alleging Winter Springs' denial of its equal protection rights, fails to state a claim for which relief may be granted. In its complaint, Sullivan asserts that Winter Springs had never previously required an applicant to undergo the expensive battery of engineering and environmental studies that Sullivan completed. Sullivan alleges that Winter Springs' reason for doing so was its desire to protect funds collected from sewer connection fees, and not legitimate purposes. Winter Springs claims that Sullivan fails to properly identify the persons who have been treated more favorably, and that Sullivan fails to allege that these persons were similarly situated. Also, Winter Springs asserts that in considering and ultimately rejecting Sullivan's application it was "clearly" concerned about a number of legitimate state interests, including environmental concerns and the safety and welfare of its citizens.

In cases involving economic regulation, courts apply a rational basis test to regulations challenged on equal protection grounds. "Legislation is presumed to be valid and will be sustained if the classification

drawn by the statute is rationally related to a legitimate state interest." *Executive 100, Inc. v. Martin County,* 922 F.2d 1536, 1541 (11th Cir.) (citing *Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985)), *cert. denied,* 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991). In *Executive 100,* the Eleventh Circuit refused to dismiss an equal protection claim when the plaintiffs alleged "that the defendants treated them differently from other similarly situated landowners ... without any reasonable basis." *Id.* Similarly, Sullivan has alleged that Winter Springs has discriminated against him, by imposing unreasonable requirements on it and denying its permit without a reasonable basis for doing so. Even in applying the rational basis test, the court cannot conclude as a matter of law that Winter Springs' actions with regard to Sullivan did not violate Sullivan's equal protection rights. The court therefore will not dismiss Sullivan's equal protection claim.

### D. Substantive Due Process Claim

Winter Springs essentially has raised three arguments in contending that Sullivan's substantive due process claim should be dismissed. First, Winter Springs states that Sullivan did not possess a property interest in the building permit sufficient to support a due process claim. Second, Winter Springs asserts that Sullivan cannot establish that the City's actions amounted to a violation of constitutional rights. Finally, the City contends that Sullivan cannot raise a substantive due process claim for this set of facts under the precedent set by *McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994) (en banc), *cert. denied,* —— U.S. ——, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995).

#### 1. Constitutionally Protected Property Interest

The Due Process Clause of the Fourteenth Amendment protects property interests created by "existing rules or understandings ... that secure certain benefits and that support claims of entitlement to those benefits." *Spence v. Zimmerman,* 873 F.2d 256, 258 (11th Cir.1989) (citing *Board of Regents of State Colleges v. Roth,* 408 U.S.

564, 577, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972)). Courts look to the source of the rules providing benefits to determine whether a claimant possesses a property interest in a particular benefit or entitlement. In this case, Florida law determines whether Sullivan has a constitutionally protected property right in obtaining the permit to construct the borrow pit. *See, e.g., Decarion v. Monroe County,* 853 F.Supp. 1415, 1418 (S.D.Fla. 1994). The question of whether a prospective builder has a protected property interest in a building permit in Florida has been the subject of much confusion in the courts. *See, e.g., Reserve, Ltd. v. Town of Longboat Key,* 17 F.3d 1374, 1379 (11th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 729, 130 L.Ed.2d 633 (1995); *Decarion,* 853 F.Supp. at 1418; *Villas of Lake Jackson, Ltd. v. Leon County,* 796 F.Supp. 1477, 1484 (N.D.Fla. 1992). There are different rules that apply when a developer seeks a permit to build on public land rather than private land, and when builders have spent funds in reliance of building permits already issued, or in reliance of preliminary approvals even if a permit has not been issued. *See Reserve, supra,* 17 F.3d at 1379–80.

Courts interpreting Florida law have noted that the doctrine of equitable estoppel may create rights in a building permit when a permit has not been issued, "if the owner expends significant sums of money in reliance upon existing zoning and preliminary approvals obtained from the regulatory governmental body even though final approvals have not yet been obtained." *Lake Jackson, supra,* 796 F.Supp. at 1489. Another court concluded that "equitable estoppel may create property interests in obtaining permits even where no permits have been issued, where the statutory prerequisites have been met and the agency had no discretionary power to deny the permit." *Decarion,* 853 F.Supp. at 1419. Sullivan has alleged that it met all of the statutory prerequisites for the borrow-pit permit, and that Winter Springs had no discretion to deny the permit. Though Winter Springs has alleged that its City Commission did have discretion to deny Sullivan's permit, the court cannot conclude as a matter of law that Sullivan does not

possess a constitutionally protected property interest in its permit.

### 2. Winter Springs' Acts

█ Winter Springs next contends that its acts cannot support Sullivan's due process claim as a matter of law. Winter Springs first notes that not all wrongful deprivations of building permits constitute violations of constitutional rights. "[N]ot every wronged party has a valid claim for a constitutional violation whenever a local building official makes an incorrect decision regarding a building permit." *Spence v. Zimmerman*, 873 F.2d 256, 260 n. 5 (11th Cir.1989). Winter Springs urges the court to avoid involving itself in this dispute, and making federal courts de facto zoning boards of appeal. Winter Springs also asserts that Winter Springs "clearly" acted rationally in denying Sullivan's application, and did so in response to concerns about the environmental impact of Sullivan's proposal, the health and safety of its citizens, the protection of property values, and aesthetic concerns.

Winter Springs does grudgingly acknowledge that there are constitutional limits on the power of zoning boards to deny permits. Winter Springs' arguments are more appropriate for a summary judgment motion, when a plaintiff must present affidavits and sworn testimony to support his contentions. At this stage, the court must accept all of Sullivan's allegations as true. Sullivan alleges that Winter Springs was not motivated by legitimate concerns but rather denied Sullivan's application out of malice and a desire to preserve sewer revenues. The court cannot dismiss Sullivan's complaint because of a factual dispute.

### 3. McKinney v. Pate's Impact on Substantive Due Process

█ Finally, the court must consider the impact of *McKinney v. Pate*, 20 F.3d 1550 (11th Cir.1994) (en banc), *cert. denied*, ─── U.S. ───, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995), on substantive due process claims in the area of zoning and the granting of building permits. The court is unaware of any other court's consideration of the effect of the Eleventh Circuit's significant opinion in

this area. *McKinney* involved an Osceola County, Florida employee who was terminated by the Osceola County Commission. The employee sued, claiming the county had violated his substantive due process right to his continued employment under Eleventh Circuit precedent, and an Eleventh Circuit panel upheld his jury award. The Eleventh Circuit reheard the case en banc, however, and overruled the panel decision as well as a number of its earlier cases. The court held that "areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.'" *McKinney*, 20 F.3d at 1556 (quoting *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (Powell, J., concurring)). Benefits created by state law are protected only by the procedural component of the Fourteenth Amendment's Due Process Clause. *Id.* at 1561.

█ Explaining its decision, the Eleventh Circuit announced that the "substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *Id.* at 1556 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 151, 82 L.Ed. 288 (1937)). Most of the rights contained in the Bill of Rights have been deemed fundamental, but few other rights have been classified as such. *Id.* "A finding that a right merits substantive due process protection means that the right is protected 'against certain government actions regardless of the fairness of the procedures used to implement them.'" *Id.* (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992) (internal quotations omitted)). Therefore, a substantive due process violation is complete when it occurs, and no amount of post-deprivation procedures can rectify the violation. A procedural due process violation, however, "is not complete 'unless and until the State fails to provide due process.' In other words, the state may cure a procedural deprivation by providing a later

procedural remedy; only when the state refuses ... does a constitutional violation actionable under section 1983 arise." *Id.* at 1557 (quoting *Zinermon v. Burch,* 494 U.S. 113, 123, 110 S.Ct. 975, 981, 108 L.Ed.2d 100 (1990)).

Besides the source of the underlying right, another characteristic that distinguishes substantive from procedural due process cases is that in substantive due process cases, "the claimant seeks compensatory damages for the value of the deprived right. In procedural due process cases, however, although the claimant may seek compensatory damages, the primary relief sought is equitable: for instance, in an employment case, the claimant typically seeks reinstatement and a properly conducted pretermination hearing." *McKinney,* 20 F.3d at 1557. When considering these factors in the context of employment termination, the Eleventh Circuit determined that under Supreme Court precedent those cases involved procedural due process, and not substantive due process rights. *Id.* at 1560.

 The question before the court in this case is whether *McKinney's* analysis of due process rights for government employment cases should apply to zoning disputes. The test used to determine whether an employee's due process rights have been violated through termination is remarkably similar to that used for a prospective builder who has been denied a permit. In improper termination cases, a violation of due process rights occurs "when an employer deprives the employee of a 'property interest for an improper motive and by means that [are] pretextual, arbitrary and capricious,' regardless of whether a hearing was held." *Nolin v. Douglas County,* 903 F.2d 1546, 1553–54 (11th Cir.1990) (quoting *Barnett v. Housing Auth. of the City of Atlanta,* 707 F.2d 1571, 1577 (11th Cir.1983)). Similarly, under current law a zoning decision will be declared a substantive due process violation if it deprives the complaining party of a constitutionally protected property interest and if the deprivation "is undertaken 'for an improper motive and by means that were pretextual, arbitrary and capricious, and ... without any rational basis.'" *Greenbriar, Ltd. v. City of*

*Alabaster,* 881 F.2d 1570, 1577 (11th Cir. 1989) (quoting *Spence v. Zimmerman,* 873 F.2d 256, 258 (11th Cir.1989)); *see also Reserve, Ltd. v. Town of Longboat Key,* 17 F.3d 1374, 1379 (11th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 729, 130 L.Ed.2d 633 (1995); *Eide v. Sarasota County,* 908 F.2d 716, 721–22 (11th Cir.1990), *cert. denied,* 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991). In *McKinney,* the Eleventh Circuit deemed this type of review of governmental action "essentially procedural." *McKinney,* 20 F.3d at 1558 n. 13.

 The source of all zoning regulations is state law and local ordinances, not the Constitution. In *Spence v. Zimmerman,* 873 F.2d 256 (11th Cir.1989), the Eleventh Circuit justified providing substantive due process protection to certain developers by invoking *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972): "No property interests are created by the Constitution; such interests are created by 'existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Spence,* 873 F.2d at 258 (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2708). The property interests in *Roth* to which the Eleventh Circuit referred, however, were those designated by the Supreme Court as protected only by *procedural* due process. *See Roth,* 408 U.S. at 577, 92 S.Ct. at 2708. Also, in zoning cases plaintiffs primarily seek injunctive relief, such as the granting of a building permit. This provides another indication that failed applicants for zoning variances and building permits can only rely on procedural due process claims to protest their treatment.

A certain group of zoning and other governmental land use decisions appears to provide substantive due process protection. A line of precedents dating back 70 years has provided that land use restrictions will be declared unconstitutional if they are "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395,

47 S.Ct. 114, 120, 71 L.Ed. 303 (1926). *See also Pennell v. City of San Jose,* 485 U.S. 1, 11, 108 S.Ct. 849, 856, 99 L.Ed.2d 1 (1988); *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 263, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977); *Village of Belle Terre v. Boraas,* 416 U.S. 1, 4, 94 S.Ct. 1536, 1538, 39 L.Ed.2d 797 (1974). As the Seventh Circuit has noted, "Otherwise a single local ordinance providing that 'we may put your land in any zone we want, for any reason we feel like' would abolish all property rights in land overnight." *River Park, Inc. v. City of Highland Park,* 23 F.3d 164, 166 (7th Cir.1994).

These cases, however, all confront legislative enactments made by municipal bodies, which are distinct from the executive acts of granting or denying individual applications for building permits and zoning variances. The Eleventh Circuit noted this distinction between legislative acts and executive acts in *McKinney,* and explicitly declared that its analysis of substantive and procedural due process only applied to executive act cases. *McKinney,* 20 F.3d at 1557 n. 9. Conversely, "only when addressing legislative acts has the Supreme Court mandated that states must demonstrate that they are violating private interests only as necessary to promote state interests." *Id.* The long line of cases providing a substantive due process cause of action for arbitrary and unreasonable zoning ordinances should be considered as an extension of other legislative act cases, rather than supporting substantive due process claims for executive acts granting or denying a particular building permit application.

The court concludes that the Eleventh Circuit's approach in zoning cases parallels that for employment cases before *McKinney,* and that because property rights to building permits are created by state law they are protected only by the procedural component of the Due Process Clause. The court therefore interprets *McKinney* as overruling the cases that provide a substantive due process cause of action for plaintiffs complaining of wrongful executive zoning decisions. *Cf. Bowman v. Alabama Dep't of Human Resources,* 857 F.Supp. 1524, 1528 (M.D.Ala. 1994) (stating that *McKinney* "applies to all non-legislative acts which involve state-created rights").

In his complaint Sullivan does not contend that Winter Springs' zoning ordinance itself violated Sullivan's rights, but that the Winter Springs City Commission maliciously denied it the building permit for improper reasons. Winter Springs' conduct therefore must be considered a set of executive acts. For the reasons stated above, the court considers this to be an allegation of a procedural due process violation, and not a substantive due process issue. *See McKinney,* 20 F.3d at 1560 ("Our responsibility . . . is to examine [the] cause of action for what it actually is, not for what [Plaintiff] would have it be."). As an alleged procedural due process violation, though, no constitutional violation takes place until the state refuses to provide a remedy. *See Zinermon v. Burch,* 494 U.S. 113, 123, 110 S.Ct. 975, 981, 108 L.Ed.2d 100 (1990). Because the parties did not adequately argue this issue and because the court is unaware of Sullivan's efforts to rectify Winter Springs' acts through the state courts, the court will not dismiss Sullivan's claim for failure to exhaust its remedies under state law at this point.

### III. Conclusion

Sullivan adequately states a complaint alleging violations of its rights under the Due Process and Equal Protection clauses of the Fourteenth Amendment. However, under *McKinney* Sullivan may only bring a procedural due process claim for Winter Springs' alleged violations of Sullivan's rights. The court **DENIES** Defendant's motion to dismiss (Doc. 16).

It is **SO ORDERED.**